UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON HUGHES, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>    v.<br><br>HURON CONSULTING GROUP INC., GARY E. HOLDREN, and GARY L. BURGE,<br><br>              Defendants. | No. 09-4734<br><br>Honorable Elaine E. Bucklo |

(caption continued on following pages)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, THE ARKANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM, THE CITY OF BOSTON RETIREMENT BOARD, CAMBRIDGE RETIREMENT SYSTEM AND THE BRISTOL COUNTY RETIREMENT SYSTEM FOR: (1) APPOINTMENT AS LEAD PLAINTIFF; (2) APPROVAL OF THEIR CHOICE OF LEAD COUNSEL; AND (3) CONSOLIDATION OF ALL RELATED SECURITIES CLASS ACTIONS**

| | |
|---|---|
| DOROTHY DeANGELIS, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>HURON CONSULTING GROUP INC., GARY E. HOLDREN,  GARY L. BURGE, WAYNE LIPSKI and PRICEWATERHOUSECOOPERS LLP,<br><br>    Defendants. | No. 09-4766 |
| NOEL M. PARSONS, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>HURON CONSULTING GROUP INC., GARY E. HOLDREN,  GARY L. BURGE, WAYNE LIPSKI and PRICEWATERHOUSECOOPERS LLP,<br><br>    Defendants. | No. 09-4791 |
| ADAM LIEBMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>HURON CONSULTING GROUP INC., GARY E. HOLDREN,  GARY L. BURGE and WAYNE LIPSKI,<br><br>    Defendants. | No. 09-4799 |

| | |
|---|---|
| GARY AUSTIN, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>    v.<br><br>HURON CONSULTING GROUP INC., GARY E. HOLDREN,  GARY L. BURGE and WAYNE LIPSKI,<br><br>             Defendants. | No. 09-4842 |
| GERALD TOBIN, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>    v.<br><br>HURON CONSULTING GROUP INC., GARY E. HOLDREN,  GARY L. BURGE and PRICEWATERHOUSECOOPERS LLP,<br><br>             Defendants. | No. 09-4859 |
| THOMAS FISHER, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>    v.<br><br>HURON CONSULTING GROUP INC., GARY E. HOLDREN,  GARY L. BURGE, WAYNE LIPSKI and PRICEWATERHOUSECOOPERS LLP,<br><br>             Defendants. | No. 09-5475 |

## I.    INTRODUCTION

The Public School Teachers' Pension & Retirement Fund of Chicago ("Chicago Teachers"), the Arkansas Public Employees Retirement System ("Arkansas"), the City of Boston Retirement Board ("Boston"), Cambridge Retirement System ("Cambridge") and the Bristol County Retirement System ("Bristol") (collectively the "Public Pension Funds") respectfully submit this memorandum in support of their motion pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order:  (a) appointing the Public Pension Funds as Lead Plaintiff for a class (the "Class") described herein; (b) approving their selection of Cohen Milstein Sellers & Toll PLLC, Bernstein Litowitz Berger & Grossmann LLP and Labaton Sucharow LLP as Lead Counsel for the Class; and (c) consolidating all related securities class actions.

The underlying cases arise from violations of the federal securities laws by Huron Consulting Group, Inc. ("Huron" or the "Company"), certain of its senior officers and the Company's independent audit firm, PricewaterhouseCoopers ("PwC").  Specifically, the actions allege that defendants' false and misleading statements regarding the Company's financial performance during the class period artificially inflated the price of Huron securities.  On March 27, 2008, the Company surprised investors by announcing quarterly results far below expectations, causing a sharp drop in the price of Huron stock.  Then, on July 31, 2009, the Company fully revealed its true financial condition by announcing that Huron would restate its previously issued financial statements to correct for its improper accounting for acquisitions. The Company also announced the resignations of the Company's Chief Executive Officer, Chief Financial Officer and Chief Accounting Officer – defendants Gary L. Holdren, Gary L. Burge,

and Wayne Lipski, respectively.  Those disclosures drove Huron's stock down **nearly 70%** in a single day, wiping out almost $660 million of shareholder equity.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation and also has made a *prima facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see generally Craig v. Sears Roebuck & Co.*, 253 F. Supp. 2d 1046 (N.D. Ill. 2003).

The Public Pension Funds respectfully submit that they are the "most adequate plaintiff" to represent the Class of investors in Huron securities by virtue of the significant loss they suffered from their investments in Huron as a result of Defendants' misconduct.  Specifically, the Public Pension Funds incurred a loss of approximately **$6.5 million** from their transactions in Huron securities during the Class Period, calculated on a first-in, first-out ("FIFO") basis, and a loss of approximately **$3.1 million** during that period, when calculated on a last-in, first-out ("LIFO") basis.[1]  Accordingly, the Public Pension Funds have an extremely large financial interest in this litigation – an interest presently believed to be greater than that of any competing movant.

Further, the Public Pension Funds satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, as their claims are typical of the other members of the proposed Class, and they will fairly and adequately represent the Class.  Indeed, as a small, cohesive group comprised of large, sophisticated public pension funds with extensive experience prosecuting

---

[1]  The currently filed complaints allege a Class Period of April 27, 2006 through July 31, 2009. The Court-appointed Lead Plaintiff will ultimately determine the operative Class Period to allege in this litigation, subject to certification by the Court.

securities class actions, the Public Pension Funds are the exact kind of investor Congress sought to empower and lead securities class actions when it enacted the PSLRA. The Public Pension Funds determined to work cooperatively of their own volition, and conferred with each other prior to filing this motion and are committed to working together to actively supervise counsel's prosecution of this case. The Public Pension Funds have selected and retained Cohen Milstein, Bernstein Litowitz, and Labaton Sucharow, law firms with substantial experience in prosecuting securities fraud class actions, to serve as Lead Counsel for the Class. Fully cognizant of this Court's decision *Sears*, the Public Pension Funds evaluated additional law firms before selecting their proposed Lead Counsel, and have engaged in fee negotiations with their counsel. Accordingly, Chicago Teachers, Arkansas, and the Massachusetts funds[2] would serve as an exemplary Lead Plaintiff and should be appointed.

## II.      STATEMENT OF THE FACTS

Huron is an independent consulting firm headquartered in Chicago. The Company was formed in 2002 by a group of former Arthur Andersen partners and employees in the wake of Andersen's collapse. Huron has roughly 1,550 consultants serving clients in four primary segments: Financial, Legal, Health & Education, and Corporate. Huron has grown significantly since its founding, fueled in part by a series of acquisitions. The thrust of this litigation is that Huron used several of those acquisitions to conceal compensation expenses and thereby bolster its reported earnings, deceiving investors as to the Company's true financial condition

Specifically, after the close of trading on July 31, 2009, the Company disclosed that it would restate its previously issued financial results for 2006, 2007, 2008 and the first quarter of 2009. The restatement is required to correct the Company's improper accounting for earn out

---

[2] These funds (Boston, Cambridge and Bristol) have a longstanding, pre-existing working relationship.

payments made in connection with four acquisitions completed between 2005 and 2007. Those payments were purportedly to be made to the selling shareholders of firms acquired by Huron, if they remained with the Company and if certain performance targets were achieved. If the payments had been made properly, they could have been properly accounted for as goodwill under Generally Accepted Accounting Principles ("GAAP"). Instead, the selling shareholders reallocated the payments amongst themselves and, significantly, to other Company employees who were not selling shareholders. Accordingly, under GAAP those payments should have been treated as compensation expense, which offsets income, rather than as goodwill, which is reflected as an asset on the Company's balance sheet.

The impact of the restatement on the Company's bottom line is significant. Because it failed to account for compensation expenses, the Company materially overstated its net income during the period covered by the restatement. The total change to net income, which is being reduced from $120 million to $63 million, is $57 million.

In connection with the restatement, the Company also announced on July 31 the resignations of Huron's Chairman and Chief Executive Officer Gary Holdren, Chief Financial Officer Gary Burge and Chief Accounting Officer Wayne Lipski. The departing officers are not expected to receive any severance pay. The Company also disclosed that, at the behest of the Securities and Exchange Commission, it is conducting an investigation into revenue recognition issues related to the allocation of chargeable hours by its consultants. The full scope and potential impact of this inquiry are not known.

These disclosures caused a massive decline in the price of Huron stock, which fell from $44.35 per share at the close of trading on July 31 to just $13.69 per share on August 3, the next trading day – a decline of 69%. That decline brought Huron stock 80% below its high over the

past twelve months.  The harm to Huron from this misconduct far exceeds the dollar amount of the restatement.  As a consulting firm, Huron trades on its reputation and subsists on its ability to retain professionals.  The recent disclosures put both the Company's reputation and the retention of key employees at risk.

Following the Company's July 31, 2009 announcement, investors filed seven securities class actions seeking to recover the losses caused by defendants' fraud.  The first such action, *Hughes v. Huron Consulting Group Inc.*, No. 09 Civ. 4734, was filed on August 4, 2009.  As required by the PSLRA, on August 4, 2009, a notice was published informing investors of the filing of this action and the 60 day deadline for filing a motion to seek lead plaintiff status, a copy of which is provided as Exhibit A to the Declaration of Carol V. Gilden (the "Gilden Decl.").  Under the PSLRA, an investor wishing to serve as lead plaintiff must file a motion within 60 days of the publication of this notice.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  The Public Pension Funds have satisfied this requirement with the filing of this motion.  *Sears*, 253 F. Supp. 2d at 1047.

## III.    ARGUMENT

### A.    The Public Pension Funds Should Be Appointed Lead Plaintiff

The Public Pension Funds respectfully submit that they should be appointed Lead Plaintiff because they are the movants "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA sets forth the procedure for the selection of lead plaintiff in federal securities class actions.  *Sears*, 253 F. Supp. 2d at 1048; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Under these sections of the Exchange Act, the court "shall" adopt a presumption that the most adequate plaintiff is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of

the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Thus, the statutory language explicitly provides that the movant or group of movants with "the largest financial interest" is entitled to presumptive appointment as Lead Plaintiff.

**1.     The Public Pension Funds Have the Largest Financial Interest
in the Relief Sought by the Class**

The Public Pension Funds respectfully submit that they have the largest financial interest of any qualified movant in this action and should therefore be appointed Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the "largest financial interest" in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust*, 229 F.R.D. at 579; *see also In re Bally Total Fitness Sec. Litig.*, No. 04 Civ. 3530, 2005 WL 627960, at *4 (N.D. Ill. March 15, 2005) ("Many courts simply determine which potential lead plaintiff claims the greatest total approximate losses."). As a result of the alleged misconduct, the Public Pension Funds sustained losses of over $6.5 million on a first-in, first-out ("FIFO") basis, and losses of over $3.1 million on a last-in, first-out ("LIFO") basis. *See* Gilden Decl. Ex. B.

Courts routinely apply both FIFO and LIFO to calculate the relative losses of lead plaintiff movants. *See*, *e.g.*, *In re AOL Time Warner Sec. and ERISA Litig.*, No. 02 Civ. 5755, 2006 WL 903236, at *18 (S.D.N.Y. April 6, 2006) ("In this District, both FIFO and LIFO have been used to calculate the financial stake of movants for lead plaintiff status in securities class actions."), comparing *In re Veeco Instruments Inc. Sec. Litig.*, 233 F.R.D. 330, 333 (S.D.N.Y. 2005) ("I agree that FIFO is the appropriate methodology to apply in matching purchases and sales for the purpose of considering the financial stake of a movant for lead plaintiff status, just

6

as it is the well-settled methodology for computing losses on securities for tax purposes."), with *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100-02 (S.D.N.Y. 2005) (finding "loss as calculated by the [lead plaintiff movant] demonstrates why FIFO (as applied by the [movant]) is inferior to LIFO."). Some courts in this District have noted that LIFO provides a better representation of a lead plaintiff movant's financial interest when the movant is a "net seller" of the subject securities; that is, one who sells more shares during the class period than she purchased. *See*, *e.g.*, *In re Comdisco Sec. Litig.*, 150 F.Supp.2d 943, 945 (N.D. Ill. 2001); *see also Hill v. The Tribune Co.*, 2005 WL 3299144, at *2 (N.D. Ill. Oct. 13, 2005) ("Under [LIFO] methodology, a potential lead plaintiff which, during the class period, was a net seller of the pertinent stock generally has a net gain and therefore generally will not have the largest financial interest in the litigation"). Here, because none of the Public Pension Funds are net sellers, the reasoning of these cases is inapposite and the FIFO methodology does not misstate the Funds' financial interest.

Therefore, under either the FIFO or LIFO methodology, the Public Pension Funds presently believe that they have the largest financial interest of any Lead Plaintiff movant and are presumptively entitled to appointment as Lead Plaintiff.

### 2.    The Public Pension Funds Are An Appropriate Lead Plaintiff Group

The express language of the PSLRA permits the appointment of a group of class members as the Lead Plaintiff, as courts in this District have recognized. *See Takara Trust*, 229 F.R.D. at 579 (noting that PSLRA permits appointment of a "person or group of persons" and appointing as lead plaintiff the plaintiff group with the largest financial interest)*; Dollens v. Zionts*, No. 01 Civ. 5931, 2001 WL 1543524, at *5 n.7 (N.D. Ill. Dec. 4, 2001) (expressing agreement with the holding in *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) that

appointment of a lead plaintiff group is appropriate under the PSLRA so long as that group will "fairly and adequately protect the interests of the class.").[3]

Those holdings are in accord with the majority view throughout the country. *See, e.g., In re McDermott Intern., Inc. Sec. Litig.*, No. 08 Civ. 9943, 2009 WL 579502 at *2 (S.D.N.Y. March 6, 2009) ("The majority of courts, including those in this District permit unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class.") (internal quotation omitted); *Eastwood Enterprises v. Farha*, No. 07 Civ. 1940, 2008 WL 687351 (M.D. Fla. March 11, 2008) (appointing group consisting of Chicago Teachers and four other public pension funds as lead plaintiff, and noting that "District courts within the Eleventh Circuit have allowed aggregation of a group's loss in order to determine whether the group is the presumptively most adequate plaintiff.") (citations omitted).

Here, the Public Pension Funds are an appropriate group because they made the decision to seek appointment as Lead Plaintiff and have conferred to discuss plans for the cooperative prosecution of this highly complex securities class action. Because the Public Pension Funds are a small, cohesive group of sophisticated institutional investors, their losses are properly aggregated for purposes of this motion.

### 3.    The Public Pension Funds Are Sophisticated Institutional Investors That Satisfy The Requirements Of Rule 23

---

[3] The concerns raised by the court in *In re Bally Total Fitness Sec. Litig.*, that appointing a lead plaintiff group "rewards lawyers who solicit plaintiffs and can produce an unmanageably large group of scores, hundreds, or perhaps even thousands of 'lead plaintiffs'" that "could not effectively manage the litigation and oversee class counsel for the benefit of the class" are simply not present here. 2005 WL 627960, at *3, quoting *Sakhrani v. Brightpoint, Inc.*, 78 F.Supp.2d 845, 853 (S.D. Ind. 1999). Indeed, the court in *Bally's* recognized that there exist "situations in which a small group might provide more effective oversight of class counsel than any single investor" (2005 WL 627960, at *4, quoting *Sakhrani*, 78 F.Supp.2d at 853), and recognized that the language of the PSLRA imbues the court with discretion to appoint a lead plaintiff group.

The PSLRA further provides that the lead plaintiff or plaintiffs must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also Sears*, 253 F. Supp. 2d at 1049; *Takara Trust*, 229 F.R.D. at 580. The Public Pension Funds have affirmatively demonstrated that they meet the adequacy and typicality requirements of Rule 23, which are the provisions of Rule 23 relevant to the determination of lead plaintiff under the PSLRA. *See Takara Trust*, 229 F.R.D. at 580.

> Only two of the Rule 23 requirements pertain to representative plaintiffs: typicality and adequacy. A lead plaintiff meets the typicality requirement if its claims or defenses are typical of the claims or defenses of the class. A lead plaintiff's claims can be considered typical if they arise out of the same event or practice or course of conduct that gives rise to the claims of other class members and its claims are based on the same legal theory. A lead plaintiff meets the adequacy requirement if it will fairly and adequately protect the interests of the class. This requirement is met if the lead plaintiff is represented by adequate counsel and has no claims that conflict with or are antagonistic to the class.

*Id.* (internal quotation marks and citations omitted).

The Public Pension Funds satisfy the adequacy requirement of Rule 23. Each has considered and approved moving for appointment as lead plaintiff in this Action, and submitted a Certification in which it affirms its understanding of its duties owed to the members of the Class. *See* Gilden Decl., Ex. B. Through those Certifications, the Public Pension Funds accept the fiduciary obligations they will undertake if appointed lead plaintiff in this Action.

Moreover, the Public Pension Funds are the paradigmatic lead plaintiff envisioned by Congress – sophisticated institutional investors with real financial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at 11, 104th Cong. 1st Sess. (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("increasing the role of institutional investors in class actions will ultimately benefit the class and courts by improving the quality of representation in securities class actions"); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 180 (3d Cir. 2005)

(PSLRA establishes "a paradigm in which the plaintiff with the largest stake in the case, usually a large and sophisticated institution, is accorded the status of lead plaintiff and assigned the right to appoint and duty to monitor lead counsel for the class."). Indeed, courts in this District have recognized that "[t]he purpose behind the PSLRA is to prevent 'lawyer-driven' litigation, and to ensure that 'parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs [sic] counsel.' Congress believed this goal could best be achieved by encouraging institutional investors to serve as lead plaintiffs." *In re Motorola*, 03 Civ. 287, 2003 WL 21673928, at *3 (N.D. Ill. July 16, 2003), quoting *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998). Each of the Public Pension Funds is also an experienced lead plaintiff. Chicago Teachers is currently serving as co-Lead Plaintiff in the WellCare Health Plans, Inc. and Ambac Financial Group, Inc. securities class actions; Arkansas is currently serving as Lead Plaintiff in the GT Solar International and Harman International Industries, Inc. securities class actions; Bristol is currently serving as a Lead Plaintiff in the European Aeronautic Defense & Space Co securities class action; Boston is currently serving as a Lead Plaintiff in, *inter alia*, the MF Global, Ltd., Oshkosh Corporation and Colonial Bancgroup, Inc. securities class actions; and Cambridge is currently serving as a Lead Plaintiff in the Anadgics, Inc. securities class action.

The Public Pension Funds also satisfy the typicality requirements of Rule 23. A proposed lead plaintiff's claims are typical of the Class when the proposed lead plaintiff's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise." *Motorola*, 2003 WL 21673928, at *3. Moreover, the Public Pension Funds' claims "are not antagonistic or in conflict with those of the class." *Id.* at *4. Indeed, the Public

Pension Funds' interests are the same as those of other Class members. Here, the Public Pension Funds, like other Class members, seeks to hold Defendants liable for the consequences of their violations of the federal securities laws. The events and course of conduct that give rise to the Public Pension Funds' claims are the same events and course of conduct that give rise to the claims of the Class. Because the Public Pension Funds' claims are based on the same legal theories and arise from the same events giving rise to the claims of other Class members, the typicality requirement of Rule 23 is satisfied.

Finally, the Public Pension Funds have considered the questions that this Court, in *Sears*, indicated should be considered by lead plaintiff movants. 253 F. Supp. 2d at 1049. The Public Pension Funds consulted multiple law firms about this litigation before retaining their selected counsel, and have engaged in fee negotiations. In connection with those negotiations, the Public Pension Funds considered the attorney fees that had been awarded in comparable securities class actions. Significantly, throughout the process of selecting counsel and negotiating fees, Chicago Teachers was represented by independent counsel. Finally, the Public Pension Funds have obtained assurances that their selected counsel have no relationships or interests that conflicts with the interests of the class.

**B.      This Court Should Approve The Public Pension Funds'
              Choice of Lead Counsel**

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to this Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "Courts typically do not disturb a lead plaintiff's choice of counsel unless doing so is necessary to protect the interests of the class." *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 305 (S.D. Ohio 2005)). *See also* H.R. Conf. Rpt. No. 104-369, at 35, 104th Cong. 1st Sess (Nov. 28, 1995) (same); *In re*

*Lernout & Hauspie Sec. Litig.*, 138 F.Supp.2d 39, 46-47 (D. Mass. 2001) ("'While the Court should not be a rubber stamp, it should give the lead plaintiff['s] choice some weight.'").

The Public Pension Funds have selected the law firms of Cohen Milstein, Bernstein Litowitz and Labaton Sucharow – which are highly experienced in prosecuting securities class actions – to serve as Lead Counsel for the class.  Cohen Milstein has developed extensive expertise from its experience as counsel for investors in some of the most significant securities fraud cases over the past thirty years, and has recovered billions of dollars for investors during that time.  *See* Gilden Decl. Ex. C (firm resume of Cohen Milstein).  With an office in this District, Cohen Milstein has been appointed lead counsel in numerous securities fraud class actions, and the firm's securities practice has earned the respect and praise of lawyers and courts throughout the country. For example, in *In re BearingPoint Securities Litigation*, No. 03- cv-1062 (TSE) (E.D. Va.), United States District Court Judge T.S. Ellis, III, praised the firm, noting that "people who run corporations are generally deterred by the fact that there are the … Cohen Milsteins out there" and the "good work" that Cohen Milstein does.  Further, Cohen Milstein recently took a securities class action case to trial and successfully negotiated a $20 million settlement near the end of the second week of the trial.  In preliminarily approving the settlement in *In re Globalstar Securities Litigation*, No. 01-CV-1748 (PKC) (S.D.N.Y.), the Honorable P. Kevin Castel remarked that plaintiffs' counsel had "done a terrific job in presenting the case for the plaintiffs."   In this District, Cohen Milstein served as co-lead counsel in the Sears Roebuck/Sears Roebuck Acceptance Corp. securities class action, and succeeding in recovering $15,500,000 from the defendants in that case on behalf of bondholders.

Bernstein Litowitz also has extensive experience litigating securities class actions and has successfully prosecuted numerous securities class actions on behalf of injured investors.  *See*

Gilden Decl. Ex. D (firm resume of Bernstein Litowitz).  For example, Bernstein Litowitz served as co-lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-CV-3288 (DLC) (S.D.N.Y.), in which settlements totaling in excess of $6 billion – one of the largest recoveries in securities class action history – were obtained for the class.  In this District, Bernstein Litowitz served as co-lead counsel in the *Navigant Consulting* securities class action, and succeeding in recovering $23 million from certain of Navigant's directors and officers.

Labaton Sucharow has had a leading role in numerous important actions on behalf of defrauded investors.  Labaton Sucharow served as lead counsel in the Waste Management securities litigation, which resulted in a settlement of $457 million, one of the largest common-fund securities class action settlements ever achieved at that time.  *See* Gilden Decl. Ex. E (Labaton Sucharow firm resume); *see also In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (stating that Labaton Sucharow "ha[s] been shown to be knowledgeable about and experienced in federal securities fraud class actions").  Also, Labaton Sucharow is currently serving as lead or co-lead counsel in the securities fraud cases against American International Group, HealthSouth, Countrywide, Bear Stearns, Fannie Mae and others. In *In re Monster Worldwide, Inc. Sec. Litig.*, No. 07-cv-2237 (S.D.N.Y. filed Mar. 15, 2007), Judge Rakoff appointed Labaton Sucharow as lead counsel, stating that "the Labaton firm is very well known to . . . courts for the excellence of its representation." (*Id.*, Hr'g Tr. 24:25-25:1, June 14, 2007).

Accordingly, the Public Pension Funds choice of counsel should be approved and Bernstein Litowitz, Cohen Milstein and Labaton should be appointed Lead Counsel for the class.

**C.    The Related Actions Should Be Consolidated**

Rule 42(a) of the Federal Rules of Civil Procedure permits the consolidation of actions that pose common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). Judicial economy generally favors consolidation and requires the court to conduct a careful inquiry that balances the prejudice and possible confusion that consolidation might entail against the waste of resources, the burden on the parties, and the risk of inconsistent judgments that separate proceedings would engender. *See Celotex*, 899 F.2d at 1285. Under Rule 42(a), this Court has broad discretion to consolidate cases pending within its district. *See Celotex*, 899 F.2d at 1284-85. Consolidation is generally ordered so long as any confusion or prejudice does not outweigh efficiency concerns. *Id*. As one court in this District noted, "A court has discretion to consolidate related cases, which involve common questions of fact and law under Fed. R. Civ. P. 42(a), 'under the policy that considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event.'" *Dollens*, 2001 WL 1543524, at *2, quoting *Ikerd v. Lapworth*, 435 F.2d 197, 204 (7th Cir. 1970).

It is also well-recognized that consolidating shareholder class action suits often benefits both the court and the parties by expediting pretrial proceedings, reducing case duplication and minimizing the expenditure of time and money by all persons concerned. *See*, *e.g.*, *Taubenfeld v. Career Educ. Corp.*, No. 03 Civ. 8884, 2004 WL 554810, at *1 (N.D. Ill. March 19, 2004 ("The court agrees that consolidation is appropriate for the six related cases insofar as each involves class action claims on behalf of purchasers of CEC stock and each asserts similar if not overlapping claims for relief. Moreover, given the similarity of the claims, the court believes that consolidation of these cases will result in substantial savings of judicial time and effort."); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (the court shall not make the lead plaintiff determination until it rules on whether to consolidate).

14

The following actions pending in this District assert class claims on behalf of purchasers of Huron securities:

| CASE NAME | DOCKET | DATE FILED |
|---|---|---|
| *Jason Hughes v. Huron Consulting Group Inc. et al* | 09-4734 | 8/4/2009 |
| *Dorothy DeAngelis v. Huron Consulting Group Inc. et al* | 09-4766 | 8/5/2009 |
| *Noel M. Parsons v. Huron Consulting Group Inc. et al* | 09-4791 | 8/5/2009 |
| *Adam Liebman v. Huron Consulting Group Inc. et al* | 09-4799 | 8/5/2009 |
| *Gary Austin v. Huron Consulting Inc. et al* | 09-4842 | 8/7/2009 |
| *Gerald Tobin v. Huron Consulting Group Inc. et al* | 09-4859 | 8/7/2009 |
| *Thomas Fisher v. Huron Consulting Group Inc. et al* | 09-5475 | 9/3/2009 |

These actions present virtually identical factual and legal issues, as they all arise out of misstatements and omissions concerning Huron during the Class Period. Each complaint seeks to hold overlapping defendants responsible for the consequences of their course of conduct and seek relief under claims arising under the federal securities laws. Plaintiffs in all of these cases share a mutual interest in having the Court resolve questions concerning whether defendants made material misstatements and/or omitted material facts, and whether the price of Huron securities became artificially inflated as a result. Indeed, all of these cases have already been deemed related under Local Rule 40.4 pursuant to this Court's October 1, 2009 Order. Because all of the above actions pending in this District present related factual and legal issues, consolidation is appropriate.

## IV.        CONCLUSION

For the above reasons, Chicago Teachers, Arkansas, Boston, Cambridge and Bristol respectfully request that the Court: (1) appoint the Public Pension Funds as the Lead Plaintiff; and (2) approve their choice of Lead Counsel; and (3) consolidate the related actions.

DATED: October 5, 2009

Respectfully submitted,

COHEN MILSTEIN SELLERS
& TOLL  PLLC
By /s/     Carol V. Gilden

190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
Tel: (312) 357-0370
Fax: (312) 357-0369
cgilden@cohenmilstein.com
Illinois Bar No: 06185530

-and-

Steven J. Toll
Daniel S. Sommers
Matthew K. Handley
1100 New York Avenue N.W.
West Tower, Suite 500
Washington, DC 20005-3964
Tel: (202) 408-4600
Fax: (202) 408-4699


BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
Avi Josefson
2835 N. Sheffield Avenue, Suite 409
Chicago, Illinois 60657
Tel: 773-883-5382
Fax: 212-554-1444
avi@blbglaw.com
Illinois Bar No. 6272453

-and-

Gerald H. Silk
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Tel: 212-554-1400
Fax: 212-554-1444


LABATON SUCHAROW LLP
Christopher J. Keller
140 Broadway
New York, New York 10005
Tel: 212-907-0700
Fax: 212-883-7053

*Counsel for the Public Pension Funds and
Proposed Lead Counsel for the Class*

## <u>CERTIFICATE OF SERVICE</u>

       I, Carol V. Gilden, hereby certify that on October 5, 2009, I caused to be filed the foregoing Memorandum of Law in Support of Motion of the Public School Teachers' Pension & Retirement Fund of Chicago, Arkansas Public Employees Retirement System, City of Boston Retirement Board, Cambridge Retirement System, and Bristol County Retirement System for (1) Appointment as Lead Plaintiff; (2) Approval of their Choice of Lead Counsel; and (3) Consolidation of All Related Securities Class Actions with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

### *<u>Counsel for Jason Hughes:</u>*

Leigh Robbin Handelman
Pomerantz Haudek Block Grossman & Gross LLP
One North LaSalle Street
Suite 2225
Chicago, IL 60602-3908
(312) 377-1181
Email: lsmollar@pomlaw.com

Patrick Vincent Dahlstrom
Pomerantz Haudek Block Grossman & Gross LLP
One North LaSalle Street
Suite 2225
Chicago, IL 60602-3908
(312) 377-1181
Email: pdahlstrom@pomlaw.com

### *<u>Counsel for defendants Huron Consulting Group, Inc., Gary E. Holdren, Gary L. Burge, and Wayne Lipski :</u>*

John C. Ellis
Richard J. Prendergast, Ltd.
111 West Washington
Suite 1100
Chicago , IL 60602
(312)641-0881
Email: jellis@rjpltd.com

Michael Thomas Layden
Richard J. Prendergast, Ltd.
111 West Washington Street
Suite 1100
Chicago , IL 60602

18

(312) 641-0881
Email: mlayden@rjpltd.com

Richard J. Prendergast
Richard J. Prendergast, Ltd.
111 West Washington Street
Suite 1100
Chicago , IL 60602
(312) 641-0881
Email: rprendergast@rjpltd.com

The foregoing Memorandum of Law was served on the following via electronic mail:

**_Counsel for Dorothy DeAngelis:_**

Lori Ann Fanning
Miller Law LLC
115 South LaSalle Street
Suite 2910
Chicago, IL 60603
(312) 332-3400
Fax: (312) 676-2676
Email: LFanning@MillerLawLLC.com

Marvin Alan Miller
Miller Law LLC
115 South LaSalle Street
Suite 2910
Chicago, IL 60603
(312) 332-3400
Fax: (312) 676-2676
Email: Mmiller@millerlawllc.com

**_Counsel for plaintiff Noel M. Parsons:_**

Amelia Susan Newton
Lasky & Rifkind, Ltd.
350 N. LaSalle Street
Suite 1320
Chicago, IL 60610
(312) 634-0057
Email: newton@laskyrifkind.com

Heidi E. VonderHeide
Lasky & Rifkind Ltd
350 N. LaSalle Street
Suite 1320
Chicago, IL 60610
312 634 0057
Email: vonderheide@laskyrifkind.com

Leigh R. Lasky
Lasky & Rifkind, Ltd.
350 N. LaSalle Street
Suite 1320
Chicago, IL 60610
(312) 634-0057
Email: lasky@laskyrifkind.com

Norman Rifkind
Lasky & Rifkind, Ltd.
350 N LaSalle Street
Suite 1320
Chicago, IL 60610
(312) 634-0057
Fax: (312) 634-0059
Email: rifkind@laskyrifkind.com

***Counsel for plaintiff Adam Liebman:***

Daniel J. Kurowski
Hagens Berman Sobol Shapiro LLP
820 North Boulevard
Suite B
Oak Park , IL 60301
708 776 5600
Fax: 708-776-5601
Email: dank@hbsslaw.com

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
820 North Boulevard
Suite B
Oak Park , IL 60301
(708) 776-5600
Fax: (708) 776-5601
Email: beth@hbsslaw.com

20

***Counsel for plaintiff Gary Austin:***

Lori Ann Fanning
Miller Law LLC
115 South LaSalle Street
Suite 2910
Chicago, IL 60603
(312) 332-3400
Fax: (312) 676-2676
Email: LFanning@MillerLawLLC.com

Marvin Alan Miller
Miller Law LLC
115 South LaSalle Street
Suite 2910
Chicago , IL 60603
(312) 332-3400
Fax: (312) 676-2676
Email: Mmiller@millerlawllc.com

***Counsel for plaintiff Gerald Tobin:***

Kenneth A. Wexler
Wexler Wallace LLP
55 West Monroe
Suite 3300
Chicago, IL 60603
(312) 346-2222
Email: kaw@wexlerwallace.com

Mark Richard Miller
Wexler Wallace LLP
55 W. Monroe Street
#3300
Chicago, IL 60603
(312)346-2222
Fax: 312-346-0022
Email: mrm@wexlerwallace.com

***Counsel for plaintiff Thomas Fisher:***

David Barry Kahn

21

David B. Kahn & Associates, Ltd.
One Northfield Plaza
Suite 100
Northfield, IL 60093
(847) 501-5083
Email: dkahn@kahnlawchicago.com

Mark E. King
David B. Kahn & Associates, Ltd.
One Northfield Plaza
Suite 100
Northfield, IL 60093
(708) 501-5083
Email: mking@kahnlawchicago.com

### *Counsel for defendant PricewaterhouseCoopers LLP:*

Emily Nicklin
Kirkland & Ellis LLP (Chicago)
300 N. LaSalle
Chicago , IL 60654
(312)862-2000
Email: enicklin@kirkland.com

Timothy A. Duffy
Kirkland & Ellis LLP (Chicago)
300 N. LaSalle
Chicago , IL 60654
(312)862-2000
Email: tduffy@kirkland.com

_____ /s/ Carol V. Gilden _____

22