**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JASON HUGHES, Individually and on Behalf of all Others Similarly Situated,**<br><br>Plaintiff,<br><br>v.<br><br>**HURON CONSULTING GROUP INC., et al.,**<br><br>Defendants.<br><br>**(Consolidated)** | No. 09 C 4734<br>No. 09 C 4842<br>No. 09 C 5475<br>No. 09 C 4791<br>No. 09 C 4799<br>No. 09 C 4859<   No. 09 C 6284<br>No. 09 C 6396 |

### ORDER

Before me are two competing motions for appointment as lead plaintiff and approval of lead counsel.[1] The first is brought by the Public School Teachers' Pension & Retirement Fund of Chicago (the "Chicago Teachers"), the Arkansas Public Employees Retirement System ("Arkansas"), the City of Boston Retirement Board ("Boston"), the Cambridge Retirement System ("Cambridge"), and the Bristol County Retirement System ("Bristol") (collectively, the "Public Pension Funds"), and the second is brought by National Roofing Industry Pension Plan and Building Trades Union United Pension Trust Fund (collectively, the "Union Funds"). Each putative lead plaintiff group seeks to represent a class of individuals in an action alleging securities fraud against defendants.

---

[1] A third motion, brought by the Inter-Local Pension Fund of the Graphic Communications Conference of the International Brotherhood of Teamsters, has been withdrawn (Docket No. 33).

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the party with the largest financial interest in the relief sought by the class is presumptively the lead plaintiff, assuming that that party otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Craig v. Sears Roebuck & Co.*, 253 F.Supp.2d 1046, 1048 (N.D. Ill. 2003). On the face of the competing motions, the Public Pension Funds appear to have suffered by far the greatest losses as a result of the misconduct alleged in the complaints. But the Union Funds challenge the Public Pension Funds' presumptive entitlement to serve as lead plaintiff on several grounds and argue that the Union Funds, the plaintiff with the second-highest losses, are the most appropriate lead plaintiff.

First, the Union Funds contend that the Public Pension Funds is not a proper "group" under the PSLRA because they have failed to demonstrate that the group members are able to function collectively in the best interest of the plaintiff class. In response, the Public Pension Funds have submitted a Joint Declaration that explains how the group came together (noting specifically that it was not at the behest of counsel), describes the steps the group has taken to work together in pursuing the individual members' shared objectives, and summarizes the contents of the group's Joint Prosecution Agreement, which establishes protocols going forward for group communication, allocation of work

and communication among co-counsel, and procedures for funding the litigation.[2]

The Union Funds insist that I should ignore the Joint Declaration because 1) it was not filed with the Public Pension Funds' opening motion, and 2) it is defective as to the signatory on behalf of Chicago Teachers.  While both arguments have some merit, I am not persuaded by either.  It may be true that the Public Pension Funds could, and perhaps should have filed the Joint Declaration with their opening motion, but no prejudice resulted from the later filing.  And although the Joint Declaration may well be defective as to Kevin Huber, who did not personally execute it on behalf of Chicago Teachers, ignoring the Joint Declaration entirely would be an unnecessarily draconian remedy for this technical defect.  Assuming Kevin Huber can indeed attest to the contents of the Joint Declaration based on his personal knowledge, he must personally execute the document, and counsel for the Public Pension Funds is ordered to file a revised Joint Declaration within ten days of this order.

Overlooking these relatively minor defects in the Joint Declaration, I am satisfied that its substance is sufficient to demonstrate that the Public Pension Funds are a proper "group"

---

[2]The Joint Prosecution Agreement is not before me, although the Public Pension Funds have offered to submit it for *in camera* inspection.  I presume the accuracy of the Public Pension Funds' general description of the document, however, and do not believe an *in camera* review is necessary at this point.

under the PSLRA.  "The statute contains no requirement that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class.'" *In re Cendant Corp. Litigation*, 264 F.3d 201, 266 (3rd Cir. 2001)).  Although lawyer-driven groups obviously established for the purpose of qualifying as lead plaintiff (and therefore, presumably less likely to take seriously their fiduciary duties to the class) are appropriately viewed with suspicion, *Id.* at 267, the Union Funds present no evidence to support their speculative assertion that the Public Pension Funds is such a group.  In fact, several members of the Public Pension Funds group assert *individual* losses in excess of the Union Funds group's collective losses, undermining any inference that the group was "cobbled together" to displace competing institutional investors as lead plaintiff.  *See Barnet v. Elan Corp.,* 236 F.R.D. 158, 162-63 (S.D.N.Y. 2005) (appointing group of six institutional investors where two individual members would still have the "largest financial interest" and there was no evidence of bad faith in formation of group); cf. *In re Razorfish, Inc., Securities Litigation*, 143 F.Supp.2d 304, 308 (S.D.N.Y. 2001) (declining to appoint a lawyer-created group of unrelated investors).

Moreover, I am not persuaded by the Union Funds' attempt to portray the existence of the Public Pension Funds' Joint Prosecution Agreement, and the fact that the Public Pension Funds

seek appointment of three (as opposed to the Union Funds' two) co-lead counsel, as evidence that the group is inherently inefficient and unwieldy due to its size.  First, the Joint Prosecution Agreement might just as easily be viewed as a testament to the institutional investors' individual and collective experience in litigating complex securities cases, and to their awareness of the need for procedures to ensure efficiency in such cases.  Second, there is no per se rule against distributing litigation responsibilities among several experienced firms, and, indeed, multiple firms "may provide the purported class with the benefits of combined resources and expertise, which may be especially valuable in a complex case where the defendants are represented by several large and highly qualified law firms." *In re Tyco Int'l, Ltd.*, Nos. 00-MD-1335-B, 2000 DNH 182, 2000 WL 1513772 at *9 (Aug. 17, 2000) (Barbadoro, J.) (citing *In re Oxford Health Plans, Inc., Secs. Lit.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998).  The Union Funds' assertion that the Public Pension Funds' desired appointment of three firms as co-counsel reveals the group's inability to agree on a single firm is, as far as I can tell, pure speculation.

Next, the Union Funds argue at length that plaintiff Chicago Teachers has artificially inflated its financial stake in the litigation by using an inappropriate method for calculating its losses (a charge the Public Pension Funds deny).  At bottom, this appears to be a dispute over whether the first-in-first-out

5

("FIFO") methodology is appropriate to analyze investor losses resulting from securities fraud. While it is true that some courts in this district and elsewhere have looked askance at the FIFO methodology in this context, *see, e.g., In re Comdisco Securities Litigation*, 150 F.Supp.2d 943, 945-46 (N.D. Ill. 2001), the issue is of little moment here, since Chicago Teachers also calculated its losses as using the last-in-first-out ("LIFO") method, which "[n]umerous courts...have held...is the appropriate method for determining loss due to securities fraud," *Makor Issues & Rights, Ltd., v. Tellabs, Inc.*, 256 F.R.D. 586, 599 (N.D. Ill. 2009), and which also exceed the losses asserted by the Union Funds. Moreover, even if Chicago Teachers' challenged losses were excluded from the Public Pension Funds' group losses, the Public Pension Funds' financial interest in the litigation would still exceed the Union Funds' interest. The Union Funds' challenge to Chicago Teachers' calculation method thus appears to be nothing more than a red herring.[3]

---

[3] The Union Funds' attack on individual plaintiff Boston's inclusion in the Public Pension Funds likewise provides no basis for disqualifying the that group from serving as lead plaintiff. The Union Funds argue that because Boston has served as lead plaintiff in eight cases in the past three years, it is subject to the PSLRA's restriction on "professional plaintiffs." But courts routinely decline to apply this restriction to institutional investors. *See, e.g., Iron Workers Local No. 25 Pension Fund v. Credit-based Assert Servicing & Securitization*, LLC, 616 F.Supp.2d 461, 467 (S.D.N.Y. 2009) (collecting cases), except in cases--such as those the Union Funds cite--that are factually distinct from this one.

In a similar vein, the Union Funds argue that because the majority of the securities sales underlying the Public Pension Funds' claimed losses were made before the defendants' alleged misconduct was revealed on July 31, 2009, losses attributable to these sales cannot be considered under the "loss causation" analysis of *Dura Pharmaceuticals, Inc., v. Broudo*, 544 U.S. 336 (2005). The Public Pension Funds respond that a *Dura* analysis is premature at this stage, and that in any event, even if only the Public Pension Funds' losses "caused by the July 31, 2009 disclosures" are considered, these losses still exceed those of the Union Funds. The Public Pension Funds include a table that purports to illustrate this comparison.

Although it is unclear how the Public Pension Funds arrived at the figures in the table, the Union Funds, for their part, make no effort to show that *any* method of calculating the Public Pension Funds' losses would reveal losses inferior to those claimed by the Union Funds. Moreover, as best I can interpret the Union Funds' own schedule of transactions, they also claim losses based in part on sales made prior to July 31, 2009.

Ultimately, of course, the Public Pension Funds will have to prove, consistent with *Dura*, that the losses they assert on behalf of the class were caused by the alleged misconduct. For now, however, I need only conclude that the Public Pension Funds adequately allege the greatest financial interest in the

litigation, and that they otherwise satisfy the requirements of Rule 23.[4]  These are the only conclusions that can reasonably be drawn from the documents before me.

For the foregoing reasons, plaintiff Public Pension Funds' motion for appointment as lead plaintiff and approval of their choice of lead counsel is granted.  Plaintiff Union Funds' competing motion is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated:  November 16 , 2009

---

[4] In the context of the PSLRA, the focus of the Rule 23 inquiry is on the adequacy and typicality requirements. *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 580 (N.D. Ill. 2005). As sophisticated institutional investors with a significant interest in the outcome of the litigation, whose claims arise out of the same event or course of conduct as other class members, the Public Pension Funds meet both of these requirements. *Id*.