**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

---

JASON HUGHES, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

vs.

HURON CONSULTING GROUP INC., GARY E.
HOLDREN, GARY L. BURGE AND WAYNE LIPSKI,

Defendants.

09-CV-06284

**Judge Elaine E. Bucklo**

**REPLY MEMORANDUM OF LAW IN SUPPORT OF  DEFENDANTS'**
**MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ......................................................................................................... 3

I.  PLAINTIFFS DO NOT PLEAD FACTS GIVING RISE TO A STRONG
    INFERENCE OF SCIENTER. ................................................................... 3

    A.  Huron's Restatement Does Not Support a Strong Inference of Scienter. ............... 3

        1.  Huron Did Not Admit That Holdren and Burge Engaged in
            Wrongdoing. .................................................................................... 3

        2.  Plaintiffs' GAAP Allegations Do Not Support a Strong Inference of
            Scienter. ............................................................................................ 6

    B.  Plaintiffs' Remaining Allegations Related to Huron's Restatement Do Not
        Support a Strong Inference of Scienter. ................................................ 11

        1.  Plaintiffs' Allegations Concerning Holdren's and Burge's
            Accounting Experience Do Not Support a Strong Inference of
            Scienter. ............................................................................................ 11

        2.  Plaintiffs' Allegations Concerning the Representation Letters to
            Huron's Auditors Do Not Support a Strong Inference of Scienter. ........... 12

        3.  The Size of the Restatement Does Not Support a Strong Inference of
            Scienter. ............................................................................................ 13

        4.  Plaintiffs' Allegations Concerning Holdren's and Burge's
            Resignations Do Not Support a Strong Inference of Scienter. ................. 14

    C.  Plaintiffs' Remaining Allegations Do Not Support a Strong Inference of
        Scienter. ............................................................................................ 15

        1.  Plaintiffs' Allegations Concerning Holdren's Stock Trades Do Not
            Support a Strong Inference of Scienter. ................................................ 15

        2.  Plaintiffs' Allegations Sourced to Confidential Witness Statements
            Do Not Support a Strong Inference of Scienter. .................................... 18

    D.  Plaintiffs' Scienter Allegations Also Fail When Considered Collectively. ........... 20

    E.  Plaintiffs Do Not Plead Scienter as to Huron. ........................................ 20

**Page**

II.     PLAINTIFFS FAIL TO PLEAD A SECTION 20(a) CLAIM AGAINST
        HOLDEN, BURGE OR LIPSKI........................................................................................20

CONCLUSION.......................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Batwin v. Occam Networks, Inc.*,
No. 07-cv-2750, 2008 WL 2676364 (C.D. Cal. July 1, 2008)................................................18

*Branca v. Paymentech, Inc.*,
No. 97-cv-2507, 2000 WL 145083 (N.D. Tex. Feb. 8, 2000) .................................................11

*Chill v. Gen. Elec. Co.*,
101 F.3d 263 (2d Cir. 1996)......................................................................................................4

*City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*,
388 F. Supp. 2d 932 (S.D. Ind. 2005) .....................................................................................16

*City of Westland Police & Fire Ret. Sys. v. Sonic Solutions*,
No. 07-cv-5111, 2009 WL 942182 (N.D. Cal. Apr. 6, 2009).............................................4, 5

*Davis v. SPSS, Inc.*,
385 F. Supp. 2d 697 (N.D. Ill. 2005) ..................................................................................6, 16

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
595 F. Supp. 2d 1253 (M.D. Fla. 2009), *aff'd*, 594 F.3d 783 (11th Cir. 2010) ..................8, 11

*Geinko v. Padda*,
No. 00-cv-5070, 2001 WL 1163728 (N.D. Ill. Sept. 28, 2001).................................................6

*Goldberg v. Household Bank, F.S.B.*,
890 F.2d 965 (7th Cir. 1989) ...................................................................................................13

*Higginbotham v. Baxter Int'l Inc.*,
495 F.3d 753 (7th Cir. 2007) ...................................................................................................16

*In re Bally Total Fitness Sec. Litig.*,
No. 04-cv-3530, 2006 WL 3714708 (N.D. Ill. July 12, 2006) .............................10, 11, 12, 13

*In re Bausch & Lomb, Inc. Sec. Litig.*,
592 F. Supp. 2d 323 (W.D.N.Y. 2008) ...................................................................................17

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)...................................................................................................18

*In re Cadence Design Sys. Sec. Litig.*,
654 F. Supp. 2d 1037 (N.D. Cal. 2009) .......................................................................9, 14, 20

*In re Cardinal Health Sec. Litig.*,
426 F. Supp. 2d 688 (S.D. Ohio 2006) ....................................................................................18

**Page(s)**

*In re Career Educ. Corp.*,
    No. 03-cv-8884, 2007 WL 1029092 (N.D. Ill. Mar. 29, 2007) ...........................................20

*In re Infosonics Corp. Deriv. Litig.*,
    No. 06-cv-0136, 2007 WL 2572276 (S.D. Cal. Sept. 4, 2007)..............................................18

*In re McKesson, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................................4

*In re Medicis Pharm. Corp. Sec. Litig.*,
    No. 08-cv-1821, 2009 WL 4755406 (D. Ariz. Dec. 2, 2009)..................................................8

*In re Metawave Commc'n Corp. Sec. Litig.*,
    629 F. Supp. 2d 1207 (W.D. Wash. 2009).............................................................................5

*In re Midway Games, Inc. Sec. Litig.*,
    332 F. Supp. 2d 1152 (N.D. Ill. 2004) .................................................................................11

*In re Nature's Sunshine Prods. Sec. Litig.*,
    486 F. Supp. 2d 1301 (D. Utah 2007)..................................................................................12

*In re Neopharm, Inc. Sec. Litig.*,
    No. 02-cv-2976, 2007 WL 625533 (N.D. Ill. Feb. 23, 2007)................................................10

*In re Paincare Holdings Sec. Litig.*,
    541 F. Supp. 2d 1283 (M.D. Fla. 2008)...............................................................................11

*In re Quintel Entertainment Inc. Sec. Litig.*,
    72 F. Supp. 2d 283 (S.D.N.Y. 1999)....................................................................................17

*In re Spyglass, Inc., Sec. Litig.*,
    No. 99-cv-0512, 1999 WL 543197 (N.D. Ill. July 21, 1999) ..........................................17, 18

*In re Taleo Corp. Sec. Litig.*,
    No. 09-cv-0151, 2010 WL 597987 (N.D. Cal. Feb. 17, 2010) ........................................11, 17

*In re UTStarcom, Inc. Sec. Litig.*,
    617 F. Supp. 2d 964 (N.D. Cal. 2009) .................................................................................14

*Indiana Electrical Workers' Pension Trust Fund IBEW v. Shaw*,
    537 F.3d 527 (5th Cir. 2008) ..............................................................................................20

*Jones v. Corus Bankshares, Inc.*,
    No. 09-cv-1358, 2010 WL 1338070 (N.D. Ill. Apr. 6, 2010)..................................................5

*Last Atlantis Capital LLC v. AGS Specialist Partners*,
    533 F. Supp. 2d 828 (N.D. Ill. 2008) ..................................................................................19

**Page(s)**

*McConville v. SEC,*
465 F.3d 780 (7th Cir. 2007) ...............................................................12

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.,*
540 F.3d 1049 (9th Cir. 2008) .......................................................16, 17

*Middlesex Ret. Sys. v. Quest Software Inc.,*
527 F. Supp. 2d 1164 (C.D. Cal. 2007) ...............................................17

*Norfolk Ret. Sys. v. Ustian,*
No. 07-cv-7014, 2009 WL 2386156 (N.D. Ill. July 28, 2009) ...............13

*P.R. Diamonds, Inc. v. Chandler,*
364 F.3d 671 (6th Cir. 2004) .................................................................4

*Patten v. N. Tr. Co.,*
-- F. Supp. 2d --, No. 08-cv-5912, 2010 WL 894050 (N.D. Ill. Mar. 9, 2010).......................17

*Payne v. DeLuca,*
433 F. Supp. 2d 547 (W.D. Pa. 2006).....................................................6

*Pugh v. Tribune Co.,*
521 F.3d 686 (7th Cir. 2008) ...............................................................17

*Rehm v. Eagle Finance Corp.,*
954 F. Supp. 1246 (N.D. Ill. 1997) .........................................................4

*Ross v. Abercrombie & Fitch Co.,*
501 F. Supp. 2d 1102 (S.D. Ohio 2007) ...............................................18

*Southwest Carpenters Pension Trust v. Merge Techs., Inc.,*
No. 06-cv- 0349, 2008 U.S. Dist. LEXIS 108223 (E.D. Wis. Mar. 31, 2008) .................14, 15

*Svezzese v. Duratek, Inc.,*
No. 01-cv-1830, 2002 WL 1012967 (D. Md. Apr. 30, 2002), *aff'd*, 67 Fed. Appx. 169
(4th Cir. 2003)........................................................................................4

*Takara Trust v. Molex Inc.,*
429 F. Supp. 2d 960 (N.D. Ill. 2006) ...................................................12

*Tatz v. Nanophase Techs. Corp.,*
No. 01-cv-8440, 2002 WL 31269485 (N.D. Ill. Oct. 9, 2002) ...............18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007)........................................................................17, 18

**Page(s)**

*United States v. Shanahan*,
   No. 07-cr-0175, 2008 WL 2225731 (E.D. Mo. May 28, 2008)..................................................8

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F. 3d 981 (9th Cir. 2009) ................................................................................................14

**Statutes & Rules**

15 U.S.C. § 78u-4(b)(2) ..............................................................................................8, 10, 18

Fed. R. Civ. P. 12(b)(6)..............................................................................................................1

**Other Authorities**

Emerging Issues Task Force Issue 95-8..........................................................................6, 7, 10, 11

Financial Accounting Statement No. 141 ......................................................................................7

## EXPLANATION OF CITATION FORMS

### The following citation forms are used in this memorandum:

- "Defs. Br." for references to the Memorandum of Law in Support of Defendants' Motion to Dismiss the Consolidated Class Action Complaint.

- "Compl." or "Complaint" for references to the Consolidated Class Action Complaint, filed January 29, 2010.

- "Earnhardt Decl." for the Declaration of J. Wes Earnhardt that accompanied the Memorandum of Law in Support of Defendants' Motion to Dismiss the Consolidated Class Action Complaint.

- "EITF 95-8" for references to Emerging Issues Task Force Issue 95-8: "Accounting for Contingent Consideration Paid to Shareholders of an Acquired Enterprise in a Purchase Business Combination" (Earnhardt Decl. Ex. L).

- "Layden Decl." for the Declaration of Michael T. Layden that accompanies the Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Consolidated Class Action Complaint.

- "Letter Agreement" for references to the July 30, 2009, Letter Agreement between Huron Consulting Group Holdings LLC and the Trustees and Beneficiaries of the Wellspring Partners Trust (Earnhardt Decl. Ex. D).

- "Pls. Br." for references to Lead Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Consolidated Class Action Complaint.

- "PSLRA" for references to the Private Securities Litigation Reform Act, codified as amended in scattered sections of Section 15 of the United States Code.

- "10-K/A" for references to the Huron Consulting Group Inc. Amended Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 (Form 10-K/A) (August 17, 2009) (Earnhardt Decl. Ex. A).

- "2009 Proxy Statement" for references to the Huron Consulting Group Inc. Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 (Form DEF 14-A), filed with the Securities and Exchange Commission on March 26, 2009 (Layden Decl. Ex. A).

Defendants Huron Consulting Group Inc. ("Huron" or the "Company"), Gary E.

Holdren, Gary L. Burge and Wayne E. Lipski (collectively, the "Individual Defendants")

respectfully submit this reply memorandum of law in support of their motion to dismiss the

Consolidated Class Action Complaint (the "Complaint") pursuant to Federal Rule of Civil

Procedure 12(b)(6).

## PRELIMINARY STATEMENT

As defendants demonstrated in their opening brief, it is well-settled that scienter

cannot be inferred from the mere fact that an issuer has restated financial results.  While

plaintiffs do not (because they cannot) contest that basic principle, they still argue that their

restatement allegations are sufficient to show scienter.  Plaintiffs are wrong; the allegations in the

Complaint are inadequate as a matter of law to show that Huron's restatement resulted from

fraud.

Plaintiffs base much of their opposition on a single sentence in Huron's

restatement -- a sentence they reference nearly twenty times -- which they claim is an

"admission" by the Company that its senior management "knew about the improper accounting

scheme." (Pls. Br. at 7.)  However, the plain language of that sentence says absolutely nothing

about knowledge of an "improper accounting scheme."  It simply states that in some cases the

Company's senior management was aware of redistributed payments but "either misunderstood

or misapplied the appropriate accounting guidance."  This is at most an acknowledgement that

senior management made an accounting mistake; it cannot reasonably be read as an

acknowledgement that anyone engaged in fraud.  (*See infra* § I.A.)

Plaintiffs' additional arguments premised on the restatement are also

unpersuasive.  *First*, Holdren's and Burge's alleged "extensive accounting experience" does not

give rise to a strong inference of scienter.  The law is clear that "must have known"-type

arguments based on a defendant's accounting background are inadequate, particularly where -- like here -- there are no allegations that the defendants had expertise in the specific accounting rules and policies at issue.  (*See infra* § I.B.1.)

*Second*, plaintiffs argue that the Court should infer scienter from Huron's acknowledgment that certain representations made by management to the Company's independent auditor were inaccurate.  However, the Complaint fails to plead any facts establishing that either Holdren or Burge knew the representations were inaccurate at the time they were made.  (*See infra* § I.B.2.)

*Third*, there is no legal basis for plaintiffs' contention that the mere size of Huron's restatement is evidence of scienter.  To the contrary, courts routinely have held that even significant GAAP errors do not by themselves establish scienter and, in any event, Huron's restatement -- although quantitatively large -- involved only a single accounting mistake.  (*See infra* § I.B.3.)

*Fourth*, scienter cannot be inferred from the fact of Holdren's and Burge's resignations.  Senior executives often depart in the wake of a restatement; in order adequately to plead scienter, plaintiffs must set forth particularized facts demonstrating that Holdren and Burge resigned due to fraud, and not as a result of the restatement itself, something plaintiffs fail to do. (*See infra* § I.B.4.)

Plaintiffs' remaining scienter allegations -- Holdren's alleged insider trading, and the alleged evidence plaintiffs collected from "confidential witnesses" -- also fall far short of raising a strong inference of scienter.  Among other things, as of the end of the class period, Holdren still held eighty percent of his Huron stock, something that is inconsistent with the proposition that Holdren had a motivation to commit fraud.  (*See infra* § I.C.1.)  With respect to the confidential witness statements, none of the purported statements has any bearing on the key

questions before the Court -- namely whether Holdren and Burge knew about the terms and

conditions pursuant to which the selling shareholders redistributed payments received from

Huron, and whether they understood how those payments should be accounted for under the

relevant GAAP provisions.  (*See infra* § I.C.2.)

## ARGUMENT

### I.    PLAINTIFFS DO NOT PLEAD FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER.

#### A.    Huron's Restatement Does Not Support a Strong Inference of Scienter.

Plaintiffs argue that the Complaint pleads scienter because, at the time it

announced its restatement, Huron allegedly admitted that senior management "knew about the

improper accounting scheme."  (Pls. Br. at 7, 12.)  Plaintiffs also argue that, because the relevant

GAAP rules allegedly were "simple," the restatement must have resulted from fraud.  (*See id.* at

21.)  Both of these arguments are meritless.

#### 1.    Huron Did Not Admit That Holdren and Burge Engaged in Wrongdoing.

In announcing the restatement, Huron made the following disclosure:

> Based on its inquiry into the facts and circumstances underlying the restatement,
> which is now substantially complete, the Audit Committee determined that the
> Shareholder Payments and the Employee Payments were not properly recorded in
> our financial statements because senior management did not properly take into
> account the impact of the selling shareholders' redistribution of the acquisition-
> related payments when determining the appropriate accounting treatment.  In
> some cases, senior management was unaware of the redistributions.  In other
> cases, senior management was aware of the redistributions but either
> misunderstood or misapplied the appropriate accounting guidance.

(10-K/A at 2 (Earnhardt Decl. Ex. A).)  Plaintiffs assert repeatedly that these disclosures amount

to an admission by the Company that Holdren and Burge knew about a supposed "improper

accounting scheme."  (Pls. Br. at 7, 11, 12, 13.)  As set forth in defendants' opening brief (*see*

Defs. Br. at 12-13), that is a clear distortion of Huron's statements.

The plain language of the disclosure states that "in some cases" senior management did not know about the redistributions, while "in other cases" senior management knew about them, but "misunderstood" or "misapplied" the relevant GAAP.  Nowhere does the disclosure state that senior management intentionally or recklessly "misunderstood" or "misapplied" GAAP; nor does it say anything about improper conduct or an accounting "scheme."  Plaintiffs cannot plead scienter by mischaracterizing a Company statement and then asserting that it is an "admission" of securities fraud.  (*See* Defs. Br. at 13, citing *Svezzese v. Duratek, Inc.*, No. 01-cv-1830, 2002 WL 1012967, at *4 (D. Md. Apr. 30, 2002) ("[F]actual allegations must be true to provide the basis for a cause of action.  A cause of action does not lie when the complaint rests on mischaracterizations of the events at issue.") (quotation omitted), *aff'd*, 67 Fed. Appx. 169 (4th Cir. 2003).).[1]

Plaintiffs also argue that Huron's use of the word "misapplied" means that Holdren and Burge must have acted with fraudulent intent.  That too is incorrect.  Courts have consistently held that scienter "requires *more than a misapplication* of accounting principles." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996) (quotation omitted; emphasis added); *see also, e.g.*, *P.R. Diamonds, Inc. v. Chandler*, 364 F.3d 671, 693 (6th Cir. 2004) (same); *City of*

---

[1] Neither *In re McKesson, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000), nor *Rehm v. Eagle Finance Corp.*, 954 F. Supp. 1246 (N.D. Ill. 1997), is to the contrary.  (*See* Pls. Br. at 12-13.)  In *McKesson*, the defendant company publicly "issued harsh statements" about terminated executives, including that the executives were "fired for cause" and had been "barred from the company's premises"; "[o]ne must assume that the intent of this entire episode was to inflate revenues"; the executives "either 'should have known, or did know, of the accounting problems"; and that there had been accounting "irregularities'," *i.e.*, "intentional misstatements or omissions."  126 F. Supp. 2d at 1273-74.  In *Rehm*, the court found that scienter was adequately pleaded where defendants "had direct access to [the company's] financial information" showing the falsity of the company's public statements and made "repeated public statements assuring investors of the reliability of the financial reports" in the areas at issue, including a mere two weeks before announcing its accounting deficiencies.  954 F. Supp. at 1255-57.

*Westland Police & Fire Ret. Sys. v. Sonic Solutions*, No. 07-cv-5111, 2009 WL 942182, at *6 (N.D. Cal. Apr. 6, 2009) (holding that "misapplication" of GAAP could not "be construed as a glaring example of scienter"); *In re Metawave Commc'n Corp. Sec. Litig.*, 629 F. Supp. 2d 1207, 1223 (W.D. Wash. 2009) ("scienter requires more than a misapplication of accounting principles.") (citations and internal punctuation omitted); *Jones v. Corus Bankshares, Inc.*, No. 09-cv-1358, 2010 WL 1338070, at *5 (N.D. Ill. Apr. 6, 2010) ("a complaint in a securities fraud action must contain specific allegations of some kind that point to fraud on the defendants' part, as opposed, say, to poor management or simple misfortune").[2]

Finally, plaintiffs continue to assert that an amendment to the Wellspring transaction documents indicates that Huron's management knew about "direct payments to Huron employees that were improperly accounted for" and learned the details of those payments "four months before the Restatement was announced." (Pls. Br. at 8, 14.) Defendants addressed that assertion -- and why it is wrong -- in their opening brief. (*See* Defs. Br. at 14-15.) *First*, the payments referenced in the Wellspring amendment were not earn-out payments, and were not the subject of any accounting mistake. (*See* Letter Agreement ¶ 4, Exhibit 2.2. to Huron 11/5/09 10-Q (Earnhardt Decl. Ex. D) (referring to payments as ones that "would *otherwise* have constituted earn-out[s].") (emphasis added).) *Second*, the Wellspring amendment demonstrates that Huron management was not aware of any distribution methodology until some time after March 31, 2009, not on or before that date. Plaintiffs fail to respond to either of these points.

---

[2] Although plaintiffs cite to this Court's recent *Jones* decision, the facts of that case are clearly distinguishable, and plaintiffs do not contend otherwise. Among other things, the complaint in that case included "many allegations" indicating that the defendant was "aware[] of the discrepancy between its public statements about its finances and the corporation's true condition." 2010 WL 1338070, at *5.

### 2. Plaintiffs' GAAP Allegations Do Not Support a Strong Inference of Scienter.

As defendants explained in their opening brief (*see* Defs. Br. at 11), to plead scienter based on Huron's restatement, plaintiffs must allege facts establishing (1) that Holdren and Burge knew the relevant details of the selling shareholders' redistributions; and (2) "that the accounting judgments which were made were such that no reasonable accountant would have made the same decision if confronted with the same facts." *Payne v. DeLuca*, 433 F. Supp. 2d 547, 580 (W.D. Pa. 2006). The Complaint fails to satisfy either prong of the test.

In addition, plaintiffs argue, without citing any authority, that the "no reasonable accountant" standard is "not the law in this Circuit." (Pls. Br. at 18.) However, numerous courts within this district have applied that standard in evaluating scienter allegations in cases involving accounting judgments. *See, e.g.*, *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 718 (N.D. Ill. 2005) (in discussing scienter, noting that "recklessness means that . . . the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts."); *Geinko v. Padda*, No. 00-cv-5070, 2001 WL 1163728, at *7 (N.D. Ill. Sept. 28, 2001) (same). The standard has also been widely adopted by appellate courts. *See, e.g., Payne*, 433 F. Supp. 2d at 580 (citing cases from the Third, Sixth and Ninth Circuits).[3]

### a. The Relevant GAAP Rules Are Complex and Require Judgment.

The Complaint acknowledges that the relevant GAAP includes EITF 95-8 (titled "Accounting for Contingent Consideration Paid to the Shareholders of an Acquired Enterprise in

---

[3] Although *Davis* and *Geinko* involved claims against auditors (as opposed to issuers), that is not a meaningful difference here because plaintiffs themselves are attempting to rely upon Holdren's and Burge's alleged accounting expertise, and the supposed obviousness of the accounting.

a Purchase Business Combination"). (*See* Compl. ¶¶ 39-40; *id.* at 18 n.5.) However, plaintiffs'

attempt to characterize EITF 95-8 as "simple and straightforward" is inconsistent with the plain

language of that rule, and ignores the points defendants raised in their opening brief (at 19-23),

including that:

- EITF 95-8 expressly states that its application is "a matter of judgment that depends on the relevant facts and circumstances."

- There are seven EITF 95-8 factors that the Complaint does not even mention, including those that concern the "[l]evel of compensation" and the reason "why the acquisition agreement includes a provision for contingent payments."

- An SEC Professional Accounting Fellow noted that the accounting at issue in EITF 95-8 is "often difficult to determine" and is not subject to a "bright-line" test.

- FAS 141 was revised in 2007 to "eliminate[] guidance that many have found to be complex, costly and arbitrary and that has been the source of considerable uncertainties and costs in the marketplace."

- The selling shareholders -- not Huron -- made the redistributions at issue.

Again, plaintiffs' conclusory assertions that the accounting was "simple" are

belied by these points, which plaintiffs do not answer in their opposition brief.

Perhaps more important, plaintiffs fail even to address whether and under what

circumstances GAAP required Huron to impute to itself the actions of the selling shareholders of

the businesses it acquired. (*See* Defs. Br. at 22-23.) That is a critical consideration, which

plaintiffs attempt to obscure throughout their papers. (*See, e.g.*, Pls. Br. at 2 (alleging that Huron

management itself "devised a scheme whereby the money paid to the selling shareholders would

be 'redistributed' to other employees").) As stated clearly in Huron's 10-K/A filing, the

restatement did not involve payments made by Huron itself. Rather, the restatement was to

correct the accounting for subsequent decisions by the selling shareholders to redistribute the

payments they had received from Huron. (*See* Defs. Br. at 5.)

The fact that, following Huron's restatement, two of Huron's peers, FTI Inc. ("FTI"), and Charles River Associates, Inc. ("CRA"), reported making the same accounting mistake (*see* Defs. Br. at 16-17) further confirms that the Court cannot accept plaintiffs' conclusory assertion that the relevant GAAP rules were plain and unambiguous.  Plaintiffs argue that the Court may not consider FTI's and CRA's SEC filings at the pleading stage.  However, other courts have considered -- at the pleading stage -- SEC filings establishing that third parties made the same mistake as the defendant.  *See In re Medicis Pharm. Corp. Sec. Litig.*, No. 08-cv-1821, 2009 WL 4755406, at *9 (D. Ariz. Dec. 2, 2009) (in granting motion to dismiss, noting that "[i]t also appears that [the company] was not alone in its mistaken interpretation . . . . Other pharmaceutical companies have attested to the SEC that they too [made similar errors].");  *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1277 (M.D. Fla. 2009) (in granting motion to dismiss, noting that other companies' misapplication of same GAAP provision "belies the plaintiffs' characterization of [it] as clear and simple") (quotation omitted), *aff'd*, 594 F.3d 783 (11th Cir. 2010).[4]

---

[4] Plaintiffs call defendants' reference to FTI and CRA the "'everyone else is doing it' defense."  (Pls. Br. at 20.)  That is a mischaracterization.  Huron is not trying to excuse the accounting mistake it self-corrected last year; nor is it attempting to establish the "truth" of any factual assertion included in the FTI and CRA filings.  It is merely demonstrating based on publicly available documents filed with the SEC that plaintiffs' conclusory assertion that the relevant accounting literature is clear and unambiguous has no basis.  That two of Huron's three "peers" -- as defined by plaintiffs (*see* Compl. ¶ 132) -- announced that they made the same error as Huron demonstrates the inherent complexity of the relevant GAAP rules and refutes plaintiffs' claim that no reasonable accountant could have made the same accounting judgment as did Huron.  Plaintiffs' citation to *United States v. Shanahan*, No. 07-cr-0175, 2008 WL 2225731 (E.D. Mo. May 28, 2008) is inapposite.  *Shanahan* did not concern the issue of pleading scienter under the PSLRA; rather, it involved a constitutional vagueness challenge to a criminal indictment.  *See id.* at *9; *see also Goodman*, 595 F. Supp. 2d at 1285 n.16 ("A criminal case not subject to the heightened pleading standard of the PSLRA, *Shanahan* holds only that a superseding indictment relying on [the relevant GAAP provision] is not unconstitutionally vague.").

### b.    Plaintiffs Have Not Adequately Pleaded That Holdren and Burge Knew the Pertinent Facts About the Redistributions.

Even assuming for purposes of argument that the relevant GAAP rules are straightforward, the Complaint still fails to raise a strong inference of scienter because it does not plead facts establishing Holdren's and Burge's knowledge of the relevant details concerning the redistributions of payments by the selling shareholders.  In other words, Holdren and Burge could not have fraudulently misaccounted for the selling shareholders' redistributions -- regardless of how straightforward the accounting rules -- if they did not know the relevant facts about them.  (*See* Defs. Br. at 12 (citing cases).)  As the court explained in *In re Cadence Design Sys. Sec. Litig.*, 654 F. Supp. 2d 1037 (N.D. Cal. 2009), "[p]laintiffs' allegations must, when taken as a whole, give rise to a 'strong inference' that Defendants were aware of these details -- otherwise, Defendants would have no way of knowing that the [transactions] were improperly classified."  *Id.* at 1046.

As set forth in defendants' opening brief, plaintiffs' allegations regarding Holdren's and Burge's knowledge of the redistribution are based solely upon the 10-K/A disclosure discussed above -- "[i]n other cases, senior management was aware of the redistributions" (*see* Compl. ¶ 49) -- and another statement the Company made in its July 30, 2009 amended agreement with Wellspring Partners.  (Pls. Br. at 13-15.)  At most, those statements establish that, in some cases, senior management was aware that the selling shareholders had redistributed payments they received from Huron.  They say nothing about who in "senior management" knew about "what redistributions."  Nor do they say that senior management was aware of sufficient details about the redistributions to determine the appropriate accounting treatment.  (*See id.*; *see also* Defs. Br. at 13-14.)

Plaintiffs' claim that defendants "fail[ed] to identify" the pertinent missing facts about the redistributions (Pls. Br. at 13) is disingenuous.  Defendants listed a number of critical details that are missing from the Complaint.  (*See, e.g.,* Defs. Br. at 13 ("[P]laintiffs plead no facts about senior management's knowledge of the 'relevant details,' including any link between the redistributions and continued employment."); *id.* at 20 ("[T]he Complaint is completely silent about Huron's non-contingent consideration."); *id.* ("[T]he Complaint is silent about the acquisition value ranges and their relationship to the contingent formulas.'); *id.* ("Plaintiffs . . . ignore the remaining EITF 95-8 factors.").)  Notably, plaintiffs allege that two key factors that purportedly "[u]nderscor[ed] the fact that these payments were really merely ordinary compensation … [were that they were] tied to continuing employment with Huron, and the achievement of 'personal performance measures.'"  (Pls. Br. at 2-3.)  The Complaint, however, pleads no facts establishing that Holdren or Burge knew that the redistribution payments were tied to continued employment with Huron and/or performance measures.

Similarly, even if plaintiffs had sufficiently pleaded that Holdren and Burge knew the relevant details concerning some of the redistributions (which they did not), plaintiffs' attempt to plead scienter over a forty-month putative class period without pleading any facts that establish when Holdren and Burge learned those details should be rejected.  The PSLRA requires plaintiffs to plead that Holdren and Burge acted with scienter "at the time [of] each allegedly fraudulent statement."  *In re Neopharm, Inc. Sec. Litig.*, No. 02-cv-2976, 2007 WL 625533, at *6 (N.D. Ill. Feb. 23, 2007).  *See also In re Bally Total Fitness Sec. Litig.* ("*Bally I*"), No. 04-cv-3530, 2006 WL 3714708, at *7 (N.D. Ill. July 12, 2006).

10

B.     **Plaintiffs' Remaining Allegations Related to Huron's Restatement Do Not Support a Strong Inference of Scienter.**

1.     **Plaintiffs' Allegations Concerning Holdren's and Burge's Accounting Experience Do Not Support a Strong Inference of Scienter.**

Plaintiffs' argument that the restatement was "no accident" because Holdren and Burge had "extensive accounting experience" (Pls. Br. at 3, 24) does not support a strong inference of scienter.  Although plaintiffs assert that Holdren and Burge -- like many executives in corporate America -- have general "accounting experience" (*see id.* at 7, 24), plaintiffs do not even attempt to show that either had any experience with EITF 95-8 and the other particular GAAP provisions at issue here.  Like lawyers -- who rarely have expertise in every area of the law -- accountants cannot be presumed to be familiar with every provision of the "19 different GAAP sources."  *In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1168 n.7 (N.D. Ill. 2004) (citations omitted).  Indeed, courts routinely have rejected such "must have known" arguments based on general accounting knowledge.  *See* Defs. Br. at 10-11; s*ee In re Taleo Sec. Corp. Sec. Litig.*, No. 09-cv-0151, 2010 WL 597987, at *10 (N.D. Cal. Feb. 17, 2010) ("[A]lthough Plaintiff alleges that [one defendant] was a CPA and that [the other defendant] was a Chartered Accountant, Plaintiff does not allege any facts to suggest that, by virtue of their professional status or their prior experience, [either] would have known, or should have known that [the company] was not applying EITF 00-21 properly."); *Bally I*, 2006 WL 3714708, at *9; *Goodman*, 595 F. Supp. 2d at 1277; *Branca v. Paymentech*, Inc., No. 97-cv-2507, 2000 WL 145083, at *10 n.20, *11 (N.D. Tex. Feb. 8, 2000); *see also* Defs. Br. at 24-25.[5]

---

[5] Plaintiffs argue that *Bally I*, *Goodman* and *Branca* "are irrelevant because Huron has expressly admitted that the Defendants knew the circumstances of the accounting errors at issue."  (Pls. Br. at 25-26 n.17.)  As shown above, however, Huron admitted no such thing.  (*See supra* pp. 3-5.)  Plaintiffs' reliance (*see* Pls. Br. at 25-26 n.17) on *In re Paincare Holdings Sec.*

### 2.    Plaintiffs' Allegations Concerning the Representation Letters to Huron's Auditors Do Not Support a Strong Inference of Scienter.

As set forth in defendants' opening brief (*see* Defs. Br. at 34-35), a mistaken representation letter to a company's independent auditor supports scienter only where there are particularized allegations showing that the signers knew the representations were false at the time they were made.  For example, in *Takara Trust v. Molex Inc.*, 429 F. Supp. 2d 960 (N.D. Ill. 2006), a case cited throughout plaintiffs' brief, the complaint alleged that the defendants had a meeting at which they discussed an accounting problem and made a "conscious decision" not to disclose the problem to their auditors. *Id.* at 980.[6]   The Complaint includes no such allegations.

Instead, plaintiffs attempt -- once again -- to rely upon the language in the Company's 10-K/A filing, which states that "the circumstances surrounding [the redistributions] were not fully described in the representation letters previously provided to [Huron's] auditors." (10-K/A at 2 (Earnhardt Decl. Ex. A).)  Plaintiffs call this language an admission, and argue that they have "alleged far more than just that Defendants misrepresented facts to their auditor."  (Pls. Br. at 27.)  Plaintiffs are wrong.  Huron's filing acknowledges only that the representation letters were incomplete at the time they were made; it is in no way an admission that the letters were deliberately incomplete or deliberately inaccurate.  Plaintiffs cannot plead scienter based on a clear mischaracterization.  *See Bally I*, 2006 WL 3714708, at *7; *see also* Defs. Br. at 34-35.

---

*Litig.*, 541 F. Supp. 2d 1283, 1293 (M.D. Fla. 2008), is misplaced.  In that case, the defendants' accounting experience was just one of many factors supporting scienter.

[6] Two other cases cited by plaintiffs (*see* Pls. Br. at 27) -- *In re Nature's Sunshine Prods. Sec. Litig.*, 486 F. Supp. 2d 1301 (D. Utah 2007), and *McConville v. SEC*, 465 F.3d 780 (7th Cir. 2007) -- also involved allegations of actual knowledge that the representations to the auditor were incorrect.

### 3.   The Size of the Restatement Does Not Support a Strong Inference of Scienter.

Plaintiffs argue that the magnitude and nature of Huron's restatement support a strong inference of scienter.  (*See* Pls. Br. at 28-31.)  That argument has no basis in the law.  As set forth in defendants' opening brief, GAAP errors -- including those that result in financial restatements of significant magnitude -- are insufficient to plead scienter.  (Defs. Br. at 10, citing cases, including *Bally I*, 2006 WL 3714709, at *7-8 (rejecting scienter based in part on a claim that restatement totaled 438% of the company's aggregate pre-restatement net income).)

The sole case upon which plaintiffs rely -- *Norfolk Ret. Sys. v. Ustian,* No. 07-cv-7014, 2009 WL 2386156 (N.D. Ill. July 28, 2009) -- is inapposite.  In *Ustian*, the complaint (unlike the Complaint here) was "excruciatingly detailed," and the restatement at issue involved "misstatements related to sixteen separate accounting areas."  *Id.* at *8.  Huron's restatement resulted from a single accounting error that was repeated over several quarters.  In addition, unlike in *Ustian*, where the complaint referenced "numerous red flags indicating inherent problems with [the Company's] accounting and internal controls" that were "ignored" by defendants, *id.*, there is no particularized allegation of intentional wrongdoing or reckless conduct by Holdren or Burge.  That the GAAP error increased Huron's reported earnings (*see* Pls. Br. at 29-30) is irrelevant; that simply is the nature of the error that was committed and courts in this Circuit have recognized that "restatements of earnings are common."  *See Goldberg v. Household Bank, F.S.B.*, 890 F.2d 965, 967 (7th Cir. 1989); Defs. Br. at 10-11.

### 4.    Plaintiffs' Allegations Concerning Holdren's and Burge's Resignations Do Not Support a Strong Inference of Scienter.

Although plaintiffs effectively concede that scienter cannot be inferred from an executive's resignation or termination, they insist that "[h]ere the circumstances of [Holdren's and Burge's] 'resignations' strongly support an inference of scienter." (Pls. Br. at 31.)  The crux of plaintiffs' argument is that, because Holdren and Burge were entitled to receive severance payments if they resigned for "strictly defined 'good reasons'", or if Huron terminated their employment "without cause" (Compl. ¶ 65), the "only plausible inference that can be drawn from Holdren's and Burge's departure from Huron without any severance is that they were terminated for cause" (Pls. Br. at 32).  Plaintiffs are mistaken.

"Where a resignation occurs slightly before or after the defendant corporation issues a restatement, a plaintiff must plead facts refuting the reasonable assumption that the resignation occurred as a result of the restatement's issuance itself in order for a resignation to be indicative of scienter."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F. 3d 981, 1002 (9th Cir. 2009).[7]  Here, there are numerous reasons why Huron might have chosen to ask Holdren and Burge to resign, none of which has anything to do with fraud.  For one thing, Huron's Board of Directors may have lost confidence in the executives and/or found it unacceptable that the Company had to restate earnings under their leadership.  *See Cadence*, 654 F. Supp. 2d at 1050 (declining to infer scienter where an executive resignation could have been attributed to "poor performance and management" or "an innocent or negligent accounting failure").[8]

---

[7] Plaintiffs argue that the standard articulated in *Zucco* is "not the law in this Circuit" (Pls. Br. at 32), but they do not explain why *Zucco* is wrong, let alone why the Court should reject the inference *Zucco* endorses.

[8] Plaintiffs' reliance (*see* Pls. Br. at 31) on *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964 (N.D. Cal. 2009), and *Southwest Carpenters Pension Trust v. Merge Techs., Inc.*, No. 06-cv-

That there exist non-culpable explanations for Holdren's and Burge's departures is further strengthened by the fact that, following their resignations, Holdren and Burge remained with the Company -- the former until August 31, 2009, the latter until the end of 2009.  (*See* Defs. Br. at 33.)  It is not plausible to suggest that Huron would have allowed Holdren and Burge to remain with the Company, let alone in a position of trust (through November 2009, Burge was Huron's Treasurer (*see id.*)), if Huron truly believed -- contrary to what it stated publicly -- that they had engaged in or condoned accounting fraud.[9]

C.     **Plaintiffs' Remaining Allegations Do Not Support a Strong Inference of Scienter.**

1.     **Plaintiffs' Allegations Concerning Holdren's Stock Trades Do Not Support a Strong Inference of Scienter.**

Plaintiffs argue that Holdren's purported "significant, suspicious insider trading . . . further supports a strong inference of scienter," because he sold "21% of his holdings . . . during the Class Period" and those sales were "dramatically out of line with prior trading practices."  (Pls. Br. at 33.)  For the reasons set forth in Defendants' opening brief (Defs. Br. at 35-38) and below, plaintiffs' argument has no merit.

---

0349, 2008 U.S. Dist. LEXIS 108223 (E.D. Wis. Mar. 31, 2008), is misplaced.  In both cases, there was evidence -- including explicit admissions by the defendant companies -- that some of the defendant officers may have been involved in misconduct that caused the restatements. There is no evidence or admission of Holdren's or Burge's culpability here.

[9] Plaintiffs' claim that Holdren and Burge would have been entitled to $22 million in severance (Pls. Br. at 32) is grossly exaggerated.  Although Huron's March 26, 2009, proxy statement does state that Holdren was entitled to $22 million, it also states that that ninety percent of that figure was based on the acceleration of stock vesting calculated using the December 31, 2008 stock price.  (2009 Proxy Statement at 25 (Layden Decl. Ex. A).)  At the time Holdren resigned, however, a substantial number of his shares had vested (*id*. at 23), and Huron's stock had declined substantially (*see* Compl. ¶ 122).  So Holdren "forfeited" only a fraction of $22 million.  As for Burge, he "forfeited" virtually nothing.  While Burge would have been entitled to six-months' severance upon termination (*see* Compl. ¶ 66), he continued his employment with Huron until the end of 2009, five months after his resignation.

*First*, plaintiffs concede that Holdren held nearly eighty percent of his Huron stock at the end of the putative class period.  (Pls. Br. at 33.)  That in and of itself undermines any inference, let alone a strong inference, of scienter.  *City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*, 388 F. Supp. 2d 932, 951 (S.D. Ind. 2005).

*Second*, in their opposition brief, plaintiffs abandon their attempt to allege (*see* Compl. ¶ 154) that Burge's stock sales are evidence of scienter.  That too defeats an inference of scienter based on insider trading.  Where one senior executive has definitively not engaged in insider trading, it casts serious doubt on the scienter of all senior executives.  *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 759 (7th Cir. 2007) ("[T]he *absence* of sales by other managers who would have been in the know . . . implies that nothing was thought to be out of the ordinary."); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008) (affirming dismissal of complaint for failure to plead scienter, even though two of the individual defendants had sold 100% and 37% of their holdings; the court noted that "[w]e typically require larger sales amounts [*i.e.*, larger than 37%] . . . and corroborative sales by other defendants[] to allow insider trading to support scienter."); *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 714-715 (N.D. Ill. 2005) ("[T]he absence of insider trading by [one individual defendant] undermines an inference of scienter. . . . If [both individual defendants] were acting in concert to inflate [the company's] stock price and increase their personal wealth, why would [one individual defendant] hold on to stock that he allegedly knew would fall from its inflated price? Scienter is not the most reasonable inference . . . .").

*Third*, even if plaintiffs' attempt to plead scienter based on alleged insider trading were not facially flawed, Holdren's sales do not support a strong inference of scienter because

the sales were not "suspicious."[10]  The sales were not "dramatically out of line with prior trading

practices" (Pls. Br. at 33) because, for more than half of the pre-class period, Holdren was

restricted from selling stock.  (*See* Defs. Br. at 36 n.24.)[11]  Moreover, the timing of Holdren's

sales is unremarkable -- the sales are evenly distributed throughout the class period and there was

no increase in sales leading up to the restatement.  (*See* Defs. Br. at 37.)[12]  That more than half of

the sales were done on behalf of the Holdren Family Trust (in which Holdren had expressly

disclaimed ownership (*see id.* at 38 n.25)), and many of the sales were executed pursuant to a

10b5-1 plan, also weighs against an inference of scienter.  *Metzler*, 540 F.3d at 1067 n.11; *In re*

*Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 344 (W.D.N.Y. 2008); *Taleo*, 2010 WL

---

[10] Because plaintiffs must have used SEC filings -- specifically Forms 4 -- to compile
Holdren's stock sales list (*see* Compl. at 34), the Court may consider those filings in assessing
the sufficiency of the Complaint.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,
322 (2007) (noting that in ruling on a motion to dismiss, the court may consider the complaint
and any documents incorporated therein, as well as matters of which the court may take judicial
notice); *Patten v. N. Tr. Co.*, -- F. Supp. 2d --, No. 08-cv-5912, 2010 WL 894050, at *1 n.2 (N.D.
Ill. Mar. 9, 2010).  Indeed, plaintiffs' own cases support this proposition.  *E.g.*, *In re Spyglass,
Inc., Sec. Litig.*, No. 99-cv-0512, 1999 WL 543197, at *5 (N.D. Ill. July 21, 1999) ("Judicial
notice may be taken of . . . Forms 3 and 4.").

[11] In fact, the pre-class period here is so brief that it provides no meaningful benchmark for
comparison.  (Defs. Br. at 36.)  Plaintiffs' case, *In re Quintel Entertainment Inc. Sec. Litig.*, is
irrelevant; although the pre-class period in that case was 14 months, the class period was three
months.  72 F. Supp. 2d 283, 286-88 (S.D.N.Y. 1999).

[12] Plaintiffs' assertion that Holdren's sales coincided with allegedly misleading disclosures
(Pls. Br. at 34) is entirely conclusory and thus insufficient.  *See, e.g.*, *Pugh v. Tribune Co.*, 521
F.3d 686, 695 (7th Cir. 2008).  Plaintiffs' argument that it is irrelevant that Holdren did not sell a
substantial portion of his holdings just before the restatement was announced (Pls. Br. at 36) is
similarly unavailing.  The case plaintiffs cite to support their argument, *Middlesex Ret. Sys. v.
Quest Software Inc.*, 527 F. Supp. 2d 1164 (C.D. Cal. 2007), is inapposite -- in *Middlesex*, unlike
here, "Defendants did not know when or even if" the alleged wrongdoing would be exposed.  *Id.*
at 1185.

597987, at *12.[13]  Finally, contrary to plaintiffs' contention, the fact that Holdren acquired a

significant amount of his holdings in Huron stock as compensation weighs against an inference

of scienter; any person whose compensation includes equity would be expected to sell securities

in the normal course.  (*See* Defs. Br. at 36-37, citing *In re Burlington Coat Factory Sec. Litig.*,

114 F.3d 1410, 1424 (3d Cir. 1997)).

    The cases plaintiffs cite in footnote 26 of their brief are all distinguishable.  Each

involves a sudden burst of high-volume and significant trading activity, circumstances that

simply are not present here.  *E.g.*, *Tatz v. Nanophase Techs. Corp.*, No. 01-cv-8440, 2002 WL

31269485, at *2 (N.D. Ill. Oct. 9, 2002) (one day sale by three defendants which constituted 33%

of the trading in defendant company's stock on that day); *In re Spyglass*, 1999 WL 543197, at

*5-6 (sale by six defendants of between 30% and 94% of their holdings during one month of a

three-month class period); *Batwin v. Occam Networks, Inc.*, No. 07-cv-2750, 2008 WL 2676364,

at *14 (C.D. Cal. July 1, 2008) (two defendants sold 100% of their stock); *Ross v. Abercrombie

& Fitch Co.*, 501 F. Supp. 2d 1102, 1114-15 (S.D. Ohio 2007) (two defendants made nearly

$130 million in proceeds in class period that lasted little over two months).

    **2.**  **Plaintiffs' Allegations Sourced to Confidential Witness Statements Do
Not Support a Strong Inference of Scienter.**

    Plaintiffs argue, almost as an afterthought, that statements they collected from

several confidential witnesses ("CWs") "provide further evidence of scienter."  (Pls. Br. at 37.)

---

[13] The cases plaintiffs cite for the proposition that the Court may not consider that many of
Holdren's sales were executed pursuant to a 10b5-1 plan pre-date *Tellabs*, *e.g.*, *In re Cardinal
Health Sec. Litig.*, 426 F. Supp. 2d 688 (S.D. Ohio 2006), or else did not arise under the PSLRA,
*e.g.*, *In re Infosonics Corp. Deriv. Litig.*, No. 06-cv-0136, 2007 WL 2572276 (S.D. Cal. Sep. 4,
2007).

However, as explained in defendants' opening brief (Defs. Br. at 25-31) and below, those statements suffer from numerous defects that render them legally insufficient.

Plaintiffs have not provided sufficient detail about the witnesses' positions at Huron that would establish how they obtained their purported knowledge (*see* Defs. Br. at 26-27),[14] and none of the witnesses even addresses the key issues here:  whether Holdren and Burge were aware of the relevant facts concerning the redistributions made by selling shareholders, and whether they understood how those facts impacted the relevant accounting provisions.  For example, it is not relevant (nor is it surprising) that Holdren (the CEO) "handled personally" Huron's efforts to expand by acquisition and "personally negotiated the sale [of a business] with [that business's] co-founders, including the 'sign-on' and retention bonuses for former . . . employees."[15]  (Pls. Br. at 37-38 (statements by CW 5).)  Nor is it relevant that Burge (the CFO) and Lipski (the Chief Accounting Officer) "would have been involved in the accounting for payments" related to the acquisitions.  (Pls. Br. at 38 (statements by CW 7).)  These allegations simply do not speak to Holdren's and Burge's actual knowledge of the accounting mistakes.

Plaintiffs' remaining allegations sourced to confidential witnesses -- *e.g.*, "[n]othing got approved without Holdren's say so"; Holdren was "involved in every facet of a business"; Holdren had a "managing to meet earnings target mentality" and "get it done at

---

[14] As this Court recognized in *Last Atlantis Capital LLC v. AGS Specialist Partners*, 533 F. Supp. 2d 828, 832 (N.D. Ill. 2008), a confidential witness statement cannot be credited where the job description of the witness was "not indicative of the extent or type of contact [the] source had with defendants . . . or of the source's insight into the alleged actions taken by defendants." Although plaintiffs attempt to distinguish *Last Atlantis* by arguing that the confidential witness statements here have been corroborated by "[d]efendants' own subsequent admissions in the Restatement" (Pls. Br. at 39-40), that is not true.  Again, there are no admissions of wrongdoing in the disclosure that accompanied Huron's restatement.

[15] Plaintiffs do not allege that Huron has restated sign-on or retention bonus payments.

whatever cost managerial style"; Holdren, Burge and Lipski were "very hands-on," "in the trenches" and "controlled Huron's payments and expenses" (Compl. ¶¶ 59-62) -- are also insufficient.  *See, e.g.*, *Cadence Design Sys.*, 654 F. Supp. 2d at 1047; *Indiana Electrical Workers' Pension Trust Fund IBEW v. Shaw*, 537 F.3d 527, 535 (5th Cir. 2008) (no scienter for defendant who "boast[ed] that there is nothing in this company that I don't know").

**D.      Plaintiffs' Scienter Allegations Also Fail When Considered Collectively.**

Because none of plaintiffs' allegations supports even a weak inference of scienter, those allegations fail to support a strong inference of scienter when considered collectively.  *See In re Career Educ. Corp.*, No. 03-cv-8884, 2007 WL 1029092, at *3 (N.D. Ill. Mar. 29, 2007) ("Plaintiffs again ask the court to view their allegations as a whole, . . . but . . . zero plus zero is zero."); Defs. Br. at 39-40.

**E.      Plaintiffs Do Not Plead Scienter as to Huron.**

In their opening brief (*see* Defs. Br. at 40), defendants explained that plaintiffs' failure to plead scienter against Holdren or Burge requires dismissal of their claim against Huron.  By their silence, plaintiffs have conceded that point.

**II.      PLAINTIFFS FAIL TO PLEAD A SECTION 20(a) CLAIM AGAINST HOLDEN, BURGE OR LIPSKI.**

Plaintiffs concede that their Section 20(a) claim requires a properly pleaded primary violation.  (*See* Pls. Br. at 40 n.36.)  For the reasons set forth above and in defendants' opening brief, the Complaint fails to state a claim under Section 10 and Rule 10b-5. Accordingly, the Section 20(a) claim must be dismissed as well.  (*See* Defs. Br. at 40.)

**CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court dismiss the Complaint in its entirety.

June 4, 2010

Respectfully submitted,

RICHARD J. PRENDERGAST, LTD.,

by

/s/ Richard J. Prendergast

Richard J. Prendergast
Michael T. Layden
Members of the Firm

111 West Washington
Suite 1100
Chicago, IL  60602
(312) 641-0881
rprendergast@ripltd.com
*Attorneys for Huron Consulting Group Inc.*

CRAVATH, SWAINE & MOORE LLP,

by

/s/ Francis P. Barron

Francis P. Barron
Rachel G. Skaistis
Members of the Firm

825 Eighth Avenue
New York, NY  10019
(212) 474-1000
fbarron@cravath.com
*Attorneys for Huron Consulting Group Inc.*

VEDDER PRICE P.C.,

by

_____/s/ Thomas P. Cimino, Jr._____
Thomas P. Cimino, Jr.
Jeanah Park.


222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500
*Attorneys for Gary E. Holdren*

SIDLEY AUSTIN LLP,

by

_____/s/ Walter C. Carlson_____
Walter C. Carlson
David A. Gordon
Partners of the Firm

One South Dearborn
Chicago, Illinois 60603
(312) 853-7036
*Attorneys for Gary L. Burge*

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP

by

_____/s/ Charles F. Smith_____
Charles F. Smith
A member of the Firm

155 N. Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
*Attorney for Wayne Lipski*

22