**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JASON HUGHES, Individually and on Behalf of all Others Similarly Situated,

Plaintiffs,

v.

HURON CONSULTING GROUP, INC., et al.

Defendants.

Master File No. 09-CV-4734

Honorable Elaine E. Bucklo

**MEMORANDUM IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

## TABLE OF CONTENTS

**Page**

ARGUMENT ........................................................................ 2

I. THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE ........................................................................ 2

A. The Requested Fees are Fair and Reasonable as a Percentage of the Fund ........................................................................ 3

B. The Lodestar/Multiplier Method Confirms the Requested Attorneys' Fees are Fair and Reasonable........................................................................ 5

C. The Quality of Legal Services Rendered Supports the Fee Request ....... 11

D. To Date, No Class Member Has Objected to the Fee and Expense Request........................................................................ 12

II. THE REQUEST FOR REIMBURSEMENT OF COSTS AND EXPENSES IS FAIR AND REASONABLE ........................................................................ 13

CONCLUSION........................................................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
MDL No. 1500, 02 Civ. 5575, 2006 U.S. Dist. LEXIS 78101 (S.D.N.Y. Sept. 28, 2006) ....8

*Aspacher v. Rosenthal Collins Group*,
No. 00-CV-7520, 2001 U.S. Dist. LEXIS 19464 (N.D. Ill. Nov. 6, 2001) ....10

*In re Bisys Sec. Litig.*,
No. 04 Civ. 3840(JSR), 2007 U.S. Dist. LEXIS 51087 (S.D.N.Y. July 16, 2007) ....5

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ....8

*Blum v. Stenson*,
465 U.S. 886 (1984)....5

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)....2

*In re Cenco, Inc. Sec. Litig.*,
519 F. Supp. 322 (N.D. Ill. 1981) ....8

*In re Continental Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ....4, 6, 10

*Cooper v. IBM Pers. Pension Plan*,
No. 99-CV-829, 2005 U.S. Dist. LEXIS 17071 (S.D. Ill. Aug. 16, 2005) ....4

*Edmonds v. United States*,
658 F. Supp. 1126 (D.S.C. 1987)....11

*Florin v. Nationsbank of Ga., N.A. ("Florin I")*,
34 F.3d 560 (7th Cir. 1994) ....2, 4, 6

*Florin v. Nationsbank of Ga., N.A. ("Florin II")*,
60 F.3d 1245 (7th Cir. 1995) ....7, 8

*In re Gulf/Oil Cities Serv. Tender Offer Litig.*,
142 F.R.D. 588 (S.D.N.Y. 1992) ....7

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) ....4, 7

*Goldsmith v. Tech. Solutions Co.*,
No. 92-CV-4374, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 11, 1995)..............................5

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers*,
212 F.R.D. 400 (E.D. Wis. 2002) ..........................................................................5, 6

*Halverson v. Convenient Food Mart, Inc.*,
458 F.2d 927 (7th Cir. 1972) .................................................................................3

*Heder v. City of Two Rivers*,
255 F. Supp. 2d 947 (E.D. Wis. 2003).....................................................................8

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)........................................................................11, 13

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)......................................................................5

*In re Kurzweil v. Philip Morris Co., Inc.*,
Nos. 94 Civ. 2373(MBM), 94 Civ. 2546(BMB), 1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. Nov. 30, 1999) .........................................................................................5

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) ...............................................................................10

*In re Linerboard Antitrust Litig.*,
No. MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ....................................6

*Long v. Trans World Airlines, Inc.*,
No. 86-CV-7521, 1993 U.S. Dist. LEXIS 5063 (N.D. Ill. Apr. 15, 1993) ...............................5

*Luciano v. Olsten Corp.*,
109 F.3d 111 (2d Cir. 1997)...............................................................................10

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002).................................................................3, 8

*McKinnie v. JP Morgan Chase Bank, N.A.*,
No. 07-CV-774, 2009 U.S. Dist. LEXIS 121561 (E.D. Wis. Dec. 31, 2009) ...........................5

*Miltland Raleigh-Durham v. Myers*,
840 F. Supp. 235 (S.D.N.Y. 1993).......................................................................13

*In re NASDAQ Market-Makers Anti-Trust Litig.*,
187 F.R.D. 465 (S.D.N.Y 1998) ........................................................................8, 10

*In re Priceline.com, Inc Sec. Litig.*,
No. 3:00-CV-1884(AVC), 2007 U.S. Dist. LEXIS 5962 (D. Conn. Jan. 26, 2007)..................5

*In re Prudential Sec. Ltd. P'ship Litig.*,
985 F. Supp. 410 (S.D.N.Y. 1997)....................6

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
No. 97-CV-7694, 2001 U.S. Dist. LEXIS 20397 (N.D. Ill. Dec. 10, 2001)....................5

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393 (S.D.N.Y. 1999)....................8

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001)....................3, 10

*Skelton v. Gen. Motors Corp.*,
860 F.2d 250 (7th Cir. 1988)....................7

*Smith v. Vill. of Maywood*,
17 F.3d 219 (7th Cir. 1994)....................8

*Spicer v. Chicago Bd. Options Exch., Inc.*,
844 F. Supp. 1226 (N.D. Ill. 1993)....................13

*In re Trans Union Corp. Privacy Litig.*,
No. 00-CV-4729, 2009 U.S. Dist. LEXIS 116934 (N.D. Ill. Dec. 9, 2009)....................4, 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................3

*Varljen v. H.J. Meyers & Co.*,
No. 97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000)....................14

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................8

*Wilfong v. Rent-A-Center, Inc.*,
No. 00-680, 2002 U.S. Dist. LEXIS 28016 (S.D. Ill. Oct. 4, 2002)....................8

**STATUTES**

15 U.S.C. § 78u-4(a)(4)....................14

15 U.S.C. § 78u- 4(a)(6)....................4

**OTHER AUTHORITIES**

H.R. Rep. No. 104-369 (1995) (Conf. Rep.)....................14

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, Lead Counsel, Cohen Milstein Sellers & Toll PLLC, Labaton Sucharow LLP, and Bernstein Litowitz Berger & Grossman LLP (collectively, "Lead Counsel") respectfully submit this memorandum in support of their Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses from the Settlement Fund[1] obtained for the Class.

Under the terms of the Stipulation of Settlement, dated January 18, 2011 (the "Stipulation"), Lead Counsel have obtained a common fund settlement valued at approximately $38 million (the "Settlement") for the immediate benefit of the Class herein. As compensation for their considerable efforts on behalf of the Class, Lead Counsel seek an award equal to 16% of the Settlement Fund (*i.e.*, 16% of the Cash Settlement Fund and 16% of the Settlement Shares), or approximately $6,080,000. Counsel respectfully submit that this fee is eminently fair and reasonable given Lead Counsel's total lodestar of more than $4,468,000, reflecting their investment of 9,278 hours of professional time.[2] Lead Counsel also request $291,163.96 as reimbursement of their expenses incurred in connection with the prosecution of this litigation to be paid from the Cash Settlement Fund, as well as $9,934.00 as reimbursement of costs and expenses incurred by lead plaintiff Public School Teachers' Pension & Retirement Fund of

---

[1] The Settlement Fund consists of $27 million in cash (the "Cash Settlement Amount") plus interest thereon (the "Cash Settlement Fund") and 474,547 shares of Huron common stock (valued at $11 million as of November 24, 2010, based on Huron common stock's closing price of $23.18) (the "Settlement Shares"). All capitalized terms in this memorandum, if not defined herein, shall have the meaning ascribed to them in the Stipulation or its exhibits.

[2] Submitted herewith is the Joint Declaration of Steven B. Singer, Carol V. Gilden and Jonathan M. Plasse in Support of (A) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Joint Declaration" or "Joint Decl."), which contains a detailed description of the history of the litigation, the claims asserted, the investigation and discovery undertaken, the negotiation and substance of the Settlement, and the substantial risks and uncertainties presented by and overcome in this litigation. Attached to the

Chicago ("Chicago Teachers") in connection with its representation of the Class in the Action, also to be paid from the Cash Settlement Fund. To date, no Class Member has objected to Lead Counsel's request for fees or reimbursement of expenses.[3]

In total, Lead Counsel have devoted 9,278 hours of professional time – equal to a lodestar value of $4,468,453.50 – and incurred $291,163.96 in unreimbursed expenses, all on a fully contingent-fee basis. To date, Lead Counsel have been paid nothing for their efforts nor received any reimbursement for their litigation expenses. The requested fee is fair and reasonable whether measured as a percentage of the common fund or with respect to Lead Counsel's lodestar, and is amply supported by the relevant case law. The requested fee also has the full support of the Lead Plaintiffs. *See* Exhibits 2-6 to the Joint Declaration. Accordingly, Lead Counsel respectfully submit that the requested fee and reimbursement of expenses should be approved.

## ARGUMENT

### I. THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE

It is well-settled that attorneys who by their efforts create a common fund for the benefit of a class are entitled to reasonable compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *Florin v. Nationsbank of Ga., N.A. ("Florin I"),* 34 F.3d 560, 563 (7th Cir. 1994) ("When a case results in the creation of a common fund for the benefit of the plaintiff class, the

---

Joint Declaration as Exhibit 7 are individual firm declarations of Lead Counsel detailing their respective lodestars and expenses.

[3] The deadline for receipt of objections and exclusions is April 22, 2011. If any objections are received, they will be addressed in Lead Counsel's reply submission, which will be filed on April 29, 2011.

common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund."). Courts have recognized that, in addition to providing just compensation, "such awards serve the dual purposes of encouraging representatives to seek redress for injuries caused to public investors and discouraging future misconduct of a similar nature." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002); *see also Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 931 n.5 (7th Cir. 1972) ("Substantial counsel fees may even be an acceptable incentive to encourage forceful prosecution of cases…."). The Supreme Court "has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission (SEC)." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

In *Taubenfeld v. Aon Corp.*, the Seventh Circuit instructed:

> when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.

415 F.3d 597, 599 (7th Cir. 2005). *See also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (same). In affirming an award of fees equal to 30% of the settlement fund plus expenses, *Taubenfeld* considered, among others, the following factors: (1) "awards made by courts in other class actions" which "amount[ed] to 30-39% of the settlement fund"; (2) "the quality of legal services rendered"; and (3) "the contingent nature of the case." *Taubenfeld*, 415 F.3d at 600.

**A. The Requested Fees are Fair and Reasonable as a Percentage of the Fund**

Although courts within this Circuit in "common fund cases have discretion to choose

either the lodestar or percentage method of calculating fees,"[4] the Seventh Circuit has strongly endorsed the percentage method, pursuant to which fees are awarded as a percentage of the common fund, because it most closely approximates the manner in which attorneys are compensated in the marketplace for contingent work. *See Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund … in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis"); *Cooper v. IBM Pers. Pension Plan*, No. 99-CV-829, 2005 U.S. Dist. LEXIS 17071, at *13 (S.D. Ill. Aug. 16, 2005) ("'[T]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class,' particularly where that percentage of the benefit approach replicates the market").[5] The Seventh Circuit also has recognized "that there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin I*, 34 F.3d at 566; *In re Trans Union*, 2009 U.S. Dist. LEXIS 116934, at *13 (same); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to award a percentage "than it would be to hassle over every item or category of hours and expenses and what multiple to fix and so forth").

The fee award requested here, amounting to 16% of the recovery, is reasonable and well-justified in light of the significant risks faced in the litigation, the obstacles overcome, and the

[4] *In re Trans Union Corp. Privacy Litig.*, No. 00-CV-4729, 2009 U.S. Dist. LEXIS 116934, at *13 (N.D. Ill. Dec. 9, 2009); *see also Florin I*, 34 F.3d at 566 ("both the lodestar approach and the percentage approach may be appropriate in determining attorney's fee awards, depending on the circumstances").

[5] The Private Securities Litigation Reform Act of 1995 ("PSLRA"), which governs this action, also endorses the percentage method. *See* 15 U.S.C. § 78u- 4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class").

quality of Lead Counsel's work. The requested 16% fee is also plainly consistent with – if not well below – fee awards made by courts in similar cases. In complex class action cases like this one, percentages in the range of 33% to 40% of the recovery have been held appropriate. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97-CV-7694, 2001 U.S. Dist. LEXIS 20397, at *10 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered."); *Goldsmith v. Tech. Solutions Co*., No. 92-CV-4374, 1995 U.S. Dist. LEXIS 15093, at *27 (N.D. Ill. Oct. 11, 1995) ("Thus, where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery.").[6]

**B. The Lodestar/Multiplier Method Confirms the Requested Attorneys' Fees are Fair and Reasonable**

Using the lodestar/multiplier method as a cross-check confirms the appropriateness of the requested fees. *See, e.g., In re Trans Union*, 2009 U.S. Dist. LEXIS 116934, at *6. The lodestar/multiplier method entails multiplying the number of hours each attorney or other professional expended on the case by his or her hourly rate to derive the lodestar figure. *See,*

---

Moreover, the Supreme Court has noted, in common fund cases, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

[6] *See, e.g., Taubenfeld*, 415 F.3d at 598 (affirming award of 30% of $7.25 million); *McKinnie v. JP Morgan Chase Bank, N.A.*, No. 07-CV-774, 2009 U.S. Dist. LEXIS 121561, at *21 (E.D. Wis. Dec. 31, 2009) (30% of $2.1 million); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers*, 212 F.R.D. 400, 417 (E.D. Wis. 2002) (30% of $10 million); *Retsky*, 2001 U.S. Dist. LEXIS 20397, at *10 (33 1/3% of $14 million); *Goldsmith*, 1995 U.S. Dist. LEXIS 15093, at *27 (33 1/3% of $4.6 million); *Long v. Trans World Airlines, Inc.*, No. 86-CV-7521, 1993 U.S. Dist. LEXIS 5063, at *1 (N.D. Ill. Apr. 15, 1993) (32% of $4.075 million settlement or $1.3 million); *see also In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (33.3% of $586 million settlement); *In re Bisys Sec. Litig.*, No. 04 Civ. 3840(JSR), 2007 U.S. Dist. LEXIS 51087, at *2 (S.D.N.Y. July 16, 2007) (30% of $65.87 million settlement); *In re Priceline.com, Inc Sec. Litig.*, No. 3:00-CV-1884(AVC), 2007 U.S. Dist. LEXIS 5962, at *4-5 (D. Conn. Jan. 26, 2007) (30% of $80 million settlement); *In re Kurzweil v. Philip Morris Co., Inc.*, Nos. 94 Civ. 2373(MBM), 94 Civ. 2546(BMB), 1999 U.S. Dist. LEXIS 18378, at *1 (S.D.N.Y. Nov. 30, 1999) (30% of $123 million settlement).

*e.g.*, *Great Neck*, 212 F.R.D. at 411. The court then typically adjusts the lodestar, by applying a multiplier, to reflect factors such as the contingent nature of the case, and the consequent risk of non-payment (or under-payment), and the quality of work performed.

"[A] risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel 'had no sure source of compensation for the services.'" *Florin I*, 34 F.3d at 565 (quoting *In re Continental,* 962 F.2d at 569) ("the need for such an adjustment is particularly acute in class action suits"). *See also In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *16 (E.D. Pa. June 2, 2004) (multiplier used to "reflect the risks of nonpayment facing counsel, to serve as an incentive for counsel to undertake socially beneficial litigation, or as a reward to counsel for an extraordinary result"); *In re Prudential Sec. Ltd. P'ship Litig.*, 985 F. Supp. 410, 414 (S.D.N.Y. 1997) ("Because counsel who rendered services were not being compensated for their work as it was being performed and because of the significant risk that they might never receive any compensation if the action was unsuccessful, courts have, when warranted, applied a multiplier to the lodestar to arrive at a fair contingent fee."). In *City of Detroit v. Grinnell Corp.*, the Second Circuit explained:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

495 F.2d 448, 470 (2d Cir. 1974). *See also In re Continental*, 962 F.2d at 569 (holding it was reversible error not to compensate for risk of nonpayment).

There are numerous class actions in which plaintiffs' counsel expended thousands of hours and advanced significant litigation expenses and yet received no remuneration whatsoever, despite their hard work and expertise. The Seventh Circuit has emphasized: "court[s] must also be careful to sustain the incentive for attorneys to continue to represent such clients on an

'inescapably contingent' basis." *Florin v. Nationsbank of Ga., N.A. ("Florin II"),* 60 F.3d 1245, 1247 (7th Cir. 1995). *See also Gaskill*, 160 F.3d at 363 (recognizing contingent-fee contracts "shift part of the risk of loss from client to lawyer").

From the very outset, no matter how strong Lead Counsel believed the case to be, there existed the significant possibility Defendants might prevail on motion, at trial, or on appeal – and hence Lead Counsel would receive no compensation for their work on behalf of the Class. Securities fraud actions are notoriously complex and risky, and frequently involve unpredictable "battles of experts." *See Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988) ("The stronger the defense, the higher the risk involved in bringing the suit and the greater the multiplier necessary to compensate plaintiff's attorney for bringing the action."). In addition, this is not a suit that "piggy-backed" on a government case charging civil or criminal liability. *See In re Gulf/Oil Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992) ("[T]his is not a case where plaintiffs' counsel can be cast as jackals to the government's lion, arriving on the scene after some enforcement or administrative agency has made the kill.").

Plainly, Lead Counsel here were not "assured of a paycheck." *See Florin II*, 60 F.3d at 1247. Nonetheless, they collectively risked significant amounts of time and money to achieve a recovery for the Class. Unlike Defendants' counsel, who are paid currently and whether they win, lose or draw, Lead Counsel have thus far received no compensation for their considerable efforts on behalf of the Class, and any award of fees or expenses to Lead Counsel has always been entirely dependent on their success in obtaining a common fund for the Class. *See Taubenfeld*, 415 F.3d at 600 ("the contingent nature of the case" and "that lead counsel was taking on a significant degree of risk of nonpayment with the case" should be considered). Yet,

like Defendants' counsel, Lead Counsel have had to meet a payroll and pay their rent and other bills on a current basis.

Here, Lead Counsel's declarations show that, through March 25, 2011, they collectively expended 9,278.30 hours of professional time prosecuting the Class's claims.[7] Lead Counsel's total lodestar, derived by multiplying the number of hours by each firm's current[8] hourly rates, amounts to $4,468,453.50. The requested fee of approximately $6,080,000 represents a multiplier of only 1.36. This modest multiplier is consistent with that awarded by courts in similar contingent fee litigation.[9]

As discussed in greater detail in the Joint Declaration, during the course of this litigation Lead Counsel have, among other things:

- Reviewed a large volume of publicly available information concerning Huron, including: (a) the Company's SEC filings; (b) Huron's annual and quarterly financial

---

[7] Additional work related to approval and administration of the Settlement continues to be done, however, Lead Counsel will not seek a fee for this work.

[8] Courts have held use of current rates is appropriate to compensate counsel for the loss of use of funds. *See Smith v. Vill. of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994) ("A court may elect to use … current rates … as acceptable compensation for the delay in payment of fees."); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 958 (E.D. Wis. 2003) ("awarding fees at the current rate … is an accepted method").

[9] *See, e.g.*, *Florin II*, 60 F.3d at 1248 (1.53 multiplier); *Wilfong v. Rent-A-Center, Inc.*, No. 00-680, 2002 U.S. Dist. LEXIS 28016, at *28 (S.D. Ill. Oct. 4, 2002) ("a multiplier of the lodestar significantly higher than the requested multiple of approximately 2 would be appropriate"); *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322, 327 (N.D. Ill. 1981) (4 multiplier). *See also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL No. 1500, 02 Civ. 5575, 2006 U.S. Dist. LEXIS 78101, at *80-84 (S.D.N.Y. Sept. 28, 2006) (3.69 multiplier); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354 (S.D.N.Y. 2005) (4 multiplier); *Maley*, 186 F. Supp. 2d at 371 ("it clearly appears that the modest multiplier of 4.65 is fair and reasonable"); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) (awarding 2.5 multiplier, and noting "[i]n recent years multipliers of between 3 and 4.5 have been common in federal securities cases"); *In re NASDAQ Market-Makers Anti-Trust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y 1998) (awarding 3.97 multiplier, and noting multipliers between 3 and 4.5 have become "common" in complex federal litigation); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ("Most lodestar multiples awarded in cases like this are between 3 and 4.").

statements, and related earnings announcements; (c) the Company's press releases; (d) transcripts of Huron's quarterly analyst conference calls; (e) news articles and wire service reports about Huron and the accounting and finance consulting industry; and (f) analysts' reports and advisories concerning the Company;

- Located and interviewed dozens of former Huron employees, twelve of which were cited as confidential witnesses in the Complaint;
- Retained and consulted with an accounting expert;
- Researched the law pertinent to the claims against Defendants and the potential defenses thereto;
- Prepared a detailed and comprehensive amended complaint based on the extensive factual and expert information Lead Counsel collected;
- Researched and drafted comprehensive briefs (and assembled supporting materials) in opposition to Defendants' motion to dismiss;
- Prepared and served numerous discovery requests on Defendants;
- Prepared and served subpoenas on Huron's outside auditor, PricewaterhouseCoopers ("PwC");
- Engaged in protracted negotiation of discovery issues with Defendants and PwC;
- Reviewed and analyzed over 400,000 pages of documents produced by Defendants and PwC;
- Consulted with Lead Counsel's in-house and external damages consultants to estimate damages and assess various issues relating to proving damages;
- Communicated with the Lead Plaintiffs with updates on litigation status throughout;
- Consulted with an experienced financial consultant to assist in evaluating the Company's financial condition and assess Defendants' ability to pay;
- Conducted arm's-length settlement negotiations with Defendants' counsel and prepared for and participated in formal mediation;
- Prepared and negotiated the Stipulation of Settlement and relevant exhibits;

*See* Joint Decl. ¶¶ 18-25, 32-35.[10]

---

[10] In addition, since the execution of the Stipulation, Lead Counsel have spent additional time preparing the motions and briefs in support of preliminary approval and final approval of the

Lead Counsel have made every effort to be efficient in litigating this Action. Lead Counsel managed the assignment of work in this case to avoid unnecessary duplicative or overlapping work and, where appropriate, assigned work to junior lawyers, paralegals and others with lower hourly rates.

Courts have held the hourly rates to be applied in calculating the lodestar are those normally charged for similar work by attorneys of comparable skill and experience in the community where the attorney practices. *See In re Synthroid*, 264 F.3d at 718 ("when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time").[11] "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *Aspacher v. Rosenthal Collins Group*, No. 00-CV-7520, 2001 U.S. Dist. LEXIS 19464, at *5 (N.D. Ill. Nov. 6, 2001) (quoting *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996)). *See also In re Continental*, 962 F.2d at 569 ("lawyers…are entitled to be compensated at market rates").

---

proposed Settlement; and coordinating the issuance of Notice and various settlement administration-related matters with the Claims Administrator and with the escrow agent that is presently holding the Settlement Fund assets in an interest-bearing account for the benefit of the Class. The time expended on Lead Counsel's Fee and Expense Application is not included in counsel's lodestar figures.

[11] *See also Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("[w]hen the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate'"); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("[t]he 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'"); *In re NASDAQ*, 187 F.R.D. at 489 (appropriate rate in performing lodestar analysis is "the rate 'normally charged for similar work by attorneys of like skill in the area,' taking into account factors such as the experience of the attorney performing the work and the type of work performed").

As shown in Lead Counsel's individual firm declarations, the hourly fee rates claimed by Lead Counsel are the same as the regular current rates charged for their services and which have been approved in other complex class action litigation.

In short, the hours expended by Lead Counsel, which produced the Settlement now before the Court, were reasonable in view of the work performed, the stage of the proceedings reached, and the complexity of the claims and defenses asserted.

**C. The Quality of Legal Services Rendered Supports the Fee Request**

Lead Counsel respectfully submit that they rendered superior representation to the Class through their efforts and persistence in litigating the Action. The "prosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). Lead Counsel practice extensively in the highly challenging field of shareholder securities litigation and have skillfully litigated these types of actions in courts across the country. *See* Joint Decl. ¶ 53, and Exhibit 3 to Exhibits 7A, 7B and 7C of the Joint Declaration.

Throughout the course of this case, Lead Counsel were confronted with a number of difficult legal and factual obstacles to establishing, among other things, scienter, materiality, damages, and causation. *See* Joint Decl. ¶¶ 26-31. Courts acknowledge that securities actions have become even more difficult from a plaintiff's perspective in the wake of the PSLRA. *See, e.g., In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). For example, in Defendants' motion to dismiss and throughout the Parties' negotiations concerning the value of the claims, Defendants asserted that Lead Plaintiffs would not be able to prove scienter, arguing, among other things, that the more plausible and compelling inference to draw from the factual circumstances concerning Huron's improper accounting was that the Company "misunderstood or misapplied" complicated Generally Accepted Accounting Principles that

required the application of judgment and the use of a multi-factor analysis. To rebut such arguments, Lead Counsel were required to master certain accounting rules and concepts and apply them to the factual evidence produced by Defendants. *See* Joint Decl. ¶¶ 26-27; *see also id*. ¶¶ 28-31.

**D. To Date, No Class Member Has Objected to the Fee and Expense Request**

In accordance with the Court's Order for Notice and Hearing, dated January 20, 2011, over 57,700 copies of the Notice of (i) Pendency and Proposed Settlement of Class Action; (ii) Settlement Fairness Hearing; and (iii) Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"), and the Proof of Claim and Release form were distributed to potential Class Members. *See* Affidavit of Jose C. Fraga Regarding (A) Mailing of the Notice and Proof of Claim; (B) Publication of the Summary Notice; and (C) Requests for Exclusion Received to Date, Joint Decl. Ex. 1, at ¶ 5. In addition, a Summary Notice was timely published in *Investor's Business Daily* and transmitted over *PR Newswire*. *See id.* at ¶ 6.

The Notice advised Class Members that Lead Counsel would:

> apply to the Court for an award of attorneys' fees in the amount of 16% of the Settlement Fund. They will seek their fees in cash and stock in the same proportion as the Settlement Fund. In addition, Lead Counsel also will apply for the reimbursement of litigation expenses paid or incurred in connection with the prosecution and resolution of the Action from the Cash Settlement Fund, in an amount not to exceed $500,000.00 … with interest thereon at the same rate and for the same period as earned by the Cash Settlement Fund.

*See* Notice at ¶ 4. The Notice further apprised Class Members of their right to object to the motion for fees and expenses. To date, no Class Member has objected. The Court-established deadline for filing objections is April 22, 2011, and if any objections are received, they will be addressed in Lead Counsel's reply submission to be filed on April 29, 2011. Additionally, the Lead Plaintiffs each have approved the fee requested here, providing further support of its reasonableness. *See* Exhibits 2-6 to the Joint Declaration, at ¶ 6.

## II. THE REQUEST FOR REIMBURSEMENT OF COSTS AND EXPENSES IS FAIR AND REASONABLE

Lead Counsel seek reimbursement from the Cash Settlement Fund of $291,163.96 in litigation expenses reasonably and actually incurred by Lead Counsel in connection with commencing and prosecuting the claims against the Defendants. Lead Counsel also request $9,394.00 as reimbursement of costs and expenses incurred by Chicago Teachers in connection with its representation of the Class in the Action.

Courts regularly award reimbursement of the expenses counsel incurred in prosecuting the litigation. *See Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1256 (N.D. Ill. 1993) (detailing and awarding expenses incurred during litigation); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.").[12] In prosecuting this complex action, Lead Counsel collectively have incurred litigation costs and expenses in the total amount of $291,163.96.

These costs and expenses were necessary to the prosecution of the Class's claims, and are detailed in the Joint Declaration (¶¶ 62-71) and in the Lead Counsel Firm Declarations (Joint Decl. at Ex. 7). Major expenses were related to, among other things, experts, on-line legal and factual research, mediation, and maintenance of the electronic database through which documents produced were reviewed.

Likewise, the PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving

[12] *In re Ikon*, 194 F.R.D. at 192 ("Counsel for each firm has submitted an affidavit attesting to the unreimbursed expenses paid out, and the court sees no reason to disallow any particular category or claim.").

on behalf of the class." 15 U.S.C. § 78u-4(a)(4). Congress, in fact, intended to grant courts discretion to approve awards in appropriate cases. *See* H.R. Rep. No. 104-369, at 35 (1995) (Conf. Rep.) ("[L]ead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and [the committee] grants the courts discretion to award fees accordingly."); S. Rep. No. 104-98, at 10 (1995) ("[T]he Committee grants courts discretion to award the lead plaintiff reimbursement for 'reasonable costs and expenses' (including lost wages) directly relating to representation of the class."). Reimbursement of such costs and expenses "encourages participation of plaintiffs in the active supervision of their counsel" – the intent of the lead plaintiff provisions of the PSLRA. *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000).

Here, Chicago Teachers incurred actual expenses of $9,394.00 to pay its outside counsel, Joseph Burns, to assist it in overseeing the Action. As these expenses "directly relat[ed] to the representation of the [C]lass" in this Action, Lead Counsel respectfully requests the Court approve reimbursement of those expenses from the Cash Settlement Fund.

## CONCLUSION

Lead Counsel respectfully request that the Court approve their motion for an award of attorneys' fees equal to 16% of the Settlement Fund to be paid from the Cash Settlement Fund and the Settlement Shares. In addition, Lead Counsel request reimbursement in the amount of $291,163.96 from the Cash Settlement Fund for their costs and expenses, and an award to Chicago Teachers of $9,394.00 for the costs and expenses it incurred in connection with its representation of the Class in this Action.

Dated: April 6, 2011

Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

By: /s/ Carol V. Gilden
Carol V. Gilden
190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
Tel.: (312) 357-0370
Fax: (312) 357-0369
cgilden@cohenmilstein.com
Attorney ID: 06185530

-and-

Steven J. Toll
Daniel S. Sommers
Matthew K. Handley
Joshua M. Kolsky
1100 New York Avenue N.W.
West Tower, Suite 500
Washington, DC 20005-3964
Tel.: (202) 408-4600

**LABATON SUCHAROW LLP**

By: /s/ Jonathan M. Plasse
Jonathan M. Plasse
Javier Bleichmar
Nicole M. Zeiss
140 Broadway
New York, NY 10005
Tel.: (212) 907-0700
Fax: (212) 883-7053

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

By: /s/ Avi Josefson
Steven B. Singer
Jeroen van Kwawegen
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel.: (212) 554-1400
Fax: (212) 554-1444

-and-

Avi Josefson
2835 N. Sheffield Avenue, Suite 409
Chicago, Illinois 60657
Tel.: (773) 883-5382

***Co-Lead Counsel for the Court-appointed Lead Plaintiffs and the Class***