**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JASON HUGHES, Individually and on Behalf of all Others Similarly Situated, | Master File No. 09-CV-4734 |
| Plaintiffs, | |
| v. | Honorable Elaine E. Bucklo |
| HURON CONSULTING GROUP, INC., et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR**
**APPROVAL OF DISTRIBUTION PLAN**

Lead Plaintiffs, the Public School Teachers' Pension & Retirement Fund of Chicago, the Arkansas Public Employees Retirement System, the City of Boston Retirement Board, the Cambridge Retirement System, and the Bristol County Retirement System (collectively, "Lead Plaintiffs"), through Lead Counsel, submit this motion pursuant to paragraph 13 of the Stipulation of Settlement with Defendants dated January 18, 2011 (the "Stipulation"). By Order and Final Judgment dated May 6, 2011 (the "Final Order"), this Court approved the Settlement and directed the parties to consummate the Stipulation in accordance with its terms and provisions. Paragraph 13 of the Stipulation requires Lead Counsel to apply to the Court, on notice to Defendants' Counsel, for an order approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of claims, approving any fees and expenses not previously applied for, and directing payment of the Net Settlement Fund to Authorized Claimants. Pursuant to paragraph 13 of the Stipulation, Lead Plaintiffs move for an

Order Approving Distribution Plan which will, among other things:  (a) approve the administrative determinations of the Claims Administrator accepting and rejecting claims; (b) approve the fees and expenses incurred and to be incurred by GCG in connection with its administration of the Settlement and direct payment of $98,264.83 out of the Settlement Fund to GCG for the unpaid balance of such fees and expenses; (c) direct distribution of the Net Settlement Fund, after deduction of the payment requested herein, and after the payment of any estimated taxes and the costs of preparing appropriate tax returns and any escrow fees, to Class Members whose Proofs of Claim have been accepted; (d) approve the plan for the disposition of uncashed or unclaimed funds following the initial Distribution; and (e) authorize destruction of the paper copies of the Proofs of Claim and all supporting documentation one year after the initial Distribution of the Net Settlement Fund, and authorize destruction of electronic copies of the same three years after the initial Distribution or one year after all funds in the Net Settlement Fund have been distributed (whichever is later).

## I.    BACKGROUND

On January 18, 2011, Lead Plaintiffs and Defendants Huron Consulting Group Inc. ("Huron"), Gary E. Holdren, Gary L. Burge, and Wayne Lipski entered into the Stipulation.  The Stipulation provided for the settlement of this action on behalf of a Class consisting of all persons or entities who purchased or otherwise acquired Huron common stock between April 27, 2006 and July 31, 2009, inclusive, and who were damaged thereby.  Excluded from the Class are Defendants; the officers and directors of Huron during the Class Period; members of the immediate families and the legal representatives, heirs, successors, or assigns of the individual defendants and the excluded Huron officers and directors, any entity in which any Defendant has or had a controlling interest; and The Holdren Family Trust.

The Notice of (I) Pendency and Proposed Settlement of Class Action; (II) Settlement Fairness Hearing; and (III) Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") and Proof of Claim and Release form (the "Proof of Claim") were mailed to all Class Members pursuant to the Order for Notice and Hearing, dated January 20, 2011 (the "Notice Order"). Pursuant to the Notice Order, Lead Counsel retained The Garden City Croup, Inc. (the "Claims Administrator"), a firm specializing in the administration of class action settlements, to print and mail copies of the Notice and Proof of Claim to the members of the Class, to process the Proofs of Claim submitted by Class Members, and to effectuate distribution of the Net Settlement Fund to the Authorized Claimants.

On May 6, 2011, the Court held a hearing to consider the proposed Settlement, approved the proposed Settlement as fair, reasonable, and adequate, dismissed this action as against the Defendants, and directed the parties to consummate the Stipulation in accordance with its terms and provisions.

## II. CLAIMS ADMINISTRATION

Under the terms of the Stipulation, a Settlement Fund consisting of $27,000,000 in cash plus 474,547 shares of Huron common stock (valued at approximately $11 million as of November 24, 2010) was established for the settlement of the claims asserted against Defendants. Pursuant to the Stipulation and the Notice Order and as set forth in the Notice and the Proof of Claim, all Class Members wishing to participate in the Settlement Fund were required to submit Proofs of Claim by mail, postmarked on or before May 5, 2011. As demonstrated by the accompanying Declaration of Jason Zuena in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan (the "Zuena Declaration"), the Claims Administrator received and reviewed all submitted claims and, to the extent that a claim was deficient, in whole

or in part, the Claims Administrator mailed the Claimant a rejection letter notifying the Claimant of the deficiency and advising the Claimant as to the possible ways to cure the deficiency. Zuena Declaration ¶¶ 27-30. Copies of sample rejection letters are attached as Exhibit A to the Zuena Declaration.

GCG carefully reviewed Claimants' responses to the rejection letters and worked with Claimants to resolve deficiencies where possible. Zuena Declaration ¶¶ 28, 30. After all responses to rejection letters were received and processed, GCG called Claimants with still-deficient Proofs of Claim with Recognized Claim amounts in excess of $100,000 to assist them in curing the deficiencies. *Id*. ¶¶ 31-34.

Consistent with the terms of the Stipulation (¶ 17(e)), all rejection letters specifically advised the Claimant that he, she or it had the right, within twenty (20) days after the mailing of the rejection letter, to contest the rejection of the claim and request Court review of the disposition of the claim. Zuena Declaration ¶¶ 27, 29, 30 and Exhibit A. GCG received letters from forty (40) Claimants contesting the administrative rejection of their claims in whole or in part. *Id*. ¶ 35. A large majority of those Claimants simultaneously provided GCG with adequate documentation and/or information to complete their Proofs of Claim and cure any remaining deficiencies and, as a result, their requests for review are now moot. *Id*. In addition, subsequent to receipt of the requests for judicial review, GCG contacted each contesting Claimant with uncured deficiencies either by telephone and/or by letter to advise him, her or it of the status of his, her or its Proof of Claim, and to explain the administrative determination. As a result of those communications, all of the contesting Claimants either affirmatively withdrew their requests for Court review, or cured the deficiency and thus their requests are now moot and the Proofs of Claim are being recommended for payment. Thus, there are no outstanding requests

for review by this Court. *Id.*

The 14,408 Proofs of Claim received include 1,125 Proofs of Claim that were postmarked or submitted electronically after the May 5, 2011 deadline established by the Court, of which 92 were, but for the late submission, otherwise eligible. *Id.* ¶ 42. No claim has been recommended for rejection solely because it was received after the initial submission deadline and GCG believes no delay has resulted from the proposed acceptance of these claims. *Id.* Lead Plaintiffs believe that when the equities are balanced, it would be unfair to prevent an otherwise valid claim from participating in the Net Settlement Fund solely because it was submitted after the cut-off date, but while timely claims were still being processed.

The Notice Order provides that "Lead Counsel may, at their discretion, accept for processing late claims provided such acceptance does not delay the distribution of the Net Settlement Fund." Notice Order ¶ 19.[1] Because the processing of these late submitted claims has not delayed the distribution to the Net Settlement Fund, Lead Plaintiffs respectfully request that this Court approve the administrative recommendation to accept the 92 otherwise valid claims submitted after the May 5, 2011 deadline.

However, there must be a final cut-off date after which no more claims may be accepted in order that there may be a proportional distribution of the Net Settlement Fund. Acceptance of any claim received after preparation of this motion would necessarily require a delay in the distribution. Accordingly, it is also respectfully requested that this Court enter an Order directing that no claim may be accepted and that no further adjustments may be made to Proofs of Claim for any reason after December 10, 2012, a date during the preparation of this motion.

---

[1] *See also* Stipulation ¶ 17(b) ("Any Class Member who fails to submit a Claim Form by [the deadline] shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (*unless, by Order of the Court, late-filed Claim Forms are accepted*)") (emphasis added).

*See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citations omitted).[2]

It is respectfully requested that the Court enter an order approving the administrative determinations accepting and rejecting claims as set forth in the Zuena Declaration.

### III. FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

Pursuant to paragraph 13 of the Stipulation, Lead Plaintiffs request an order approving payment of the fees and expenses of the Claims Administrator. In accordance with the Claims Administrator's agreement with Lead Counsel to act as the Claims Administrator herein, the Claims Administrator was responsible for mailing notice to the Class, processing the claims, and distributing the Net Settlement Fund to Authorized Claimants. As set forth in ¶ 47 of the Zuena Declaration and Exhibit C attached thereto, GCG's fees and expenses for its work performed through November 15, 2012 and to be performed in connection with the initial distribution total $392,722.70. To date, GCG has received payments totaling $294,457.87. Zuena Declaration ¶ 47.[3] Accordingly, there is an outstanding balance due to GCG of $98,264.83. *Id.* Lead Plaintiffs respectfully request that the Court approve all of GCG's fees and expenses.

---

[2] Lead Plaintiffs and Lead Counsel respectfully request that the Order provide one narrow exception to the bar on acceptance or modification of Proofs of Claim after December 10, 2012: if any claims are received or modified after that date that would have been eligible for payment or additional payment under the Court-approved Plan of Allocation had they been timely received, then, at the time Lead Counsel and GCG agree that further redistribution to Authorized Claimants is not cost effective, such claims may be paid the distribution amounts or additional distribution amounts on a *pro rata* basis to bring them into parity with other Authorized Claimants who have cashed all their prior distributions to the extent possible. *See* Zuena Declaration ¶ 48(h).

[3] Paragraph 8(d) of the Stipulation provides that Lead Counsel may pay up to $300,000 from the Cash Settlement Fund for reasonable Notice and Administration Costs without further Order of the Court.

## IV.   DISTRIBUTION OF NET SETTLEMENT FUND

It is also respectfully requested that the Court enter an Order directing and authorizing distribution of the balance of the Settlement Fund, plus the interest accrued thereon, after the deduction of the fees and expenses previously awarded and those requested herein and after payment of any estimated taxes and the costs of preparing appropriate tax returns and any escrow fees, to the Class Members whose claims have been accepted as set forth on the list of accepted claims submitted with the Zuena Declaration, in proportion to their Recognized Claims as shown therein, subject to the $10 minimum for payments as detailed in Paragraph 48 of the Zuena Declaration (the "Distribution").  *See* Zuena Declaration at ¶ 48 and Exhibits B-1 and B-2.[4]

GCG shall also provide Huron and its counsel with instructions for Huron's transfer agent setting forth the number of Settlement Shares to be posted to the Authorized Claimants' accounts established on the Direct Registration System maintained by Depository Trust Company for each Authorized Claimant who is eligible to receive Settlement Shares, subject to the provision in the Plan of Allocation that, if the prorated payment from the Settlement Shares calculates to a fractional amount, the fractional portion will not be distributed.  *See* Zuena Declaration ¶ 48(f).  Authorized Claimants who did not provide the required information for such posting in their Proof of Claim or pursuant to the follow up conducted by GCG as indicated on Exhibit B-4 of the Zuena Declaration shall have forfeited their right to any distribution of Settlement Shares.  *See id.*

---

[4] At the request of the Securities and Exchange Commission ("SEC"), GCG will also be distributing approximately $1.3 million recovered by the SEC in a related action against Huron and others.  The timing of the availability of the SEC funds has not been determined and, so as to not delay the distribution of the Net Settlement Fund, it has been agreed that, if the SEC funds are not available for distribution at the time of the initial distribution of the Net Settlement Fund, those funds will be included in subsequent distributions of the Net Settlement Fund.  *See* Zuena Declaration ¶ 48(c) n. 6.

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, Lead Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of the such involvement, and bar all Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amount allocated to Authorized Claimants.

## V.    DISPOSITION OF ANY UNCLAIMED/UNCASHED BALANCE

Based on the substantial experience of Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Class Members who filed valid claims will not be cashed promptly.  In order to encourage Class Members to promptly cash their distributions and to avoid or reduce future expenses relating to unpaid distributions, we propose that all the distribution drafts bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 120 DAYS AFTER ISSUE

DATE]." Zuena Declaration ¶ 48(d). Authorized Claimants who do not cash their Distribution drafts within the time allotted or on the conditions set forth in paragraph 48(d), footnote 7 of the Zuena Declaration shall irrevocably forfeit all cash recovery from the Settlement. The funds allocated to all such stale-dated drafts shall be available to be redistributed to other Authorized Claimants in any subsequent distributions. *Id.* ¶ 48(e).

Lead Plaintiffs also request that, consistent with the Court-approved Plan of Allocation, if any cash remains in the Net Settlement Fund after the Distribution because of uncashed distributions or other reasons, then, after GCG has made reasonable and diligent efforts to have Authorized Claimants cash their Distribution drafts, any cash balance remaining in the Net Settlement Fund one (1) year after the Distribution will, if economically feasible, be redistributed to Authorized Claimants who have cashed their Distribution drafts and who would receive at least $10.00 from such redistribution, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such redistribution. If any cash shall remain in the Net Settlement Fund after such redistribution, additional redistributions to Authorized Claimants who have cashed their prior distribution drafts and who would receive at least $10.00 from such additional redistributions after deduction of any additional fees and expenses that would be incurred with respect to such redistributions will occur thereafter in six-month intervals until Lead Counsel, in consultation with GCG, determine that a redistribution is not cost effective, at which time Lead Counsel will donate the balance of the cash in the Net Settlement Fund to non-sectarian, not-for-profit, 501(c)(3) organization(s).[5] Lead Plaintiffs respectfully request that the remaining funds be donated to the following organizations: Institute for Law and Economic

---

[5] As set forth in footnote 2 above, any distributions to otherwise valid late or late adjusted claims received after December 10, 2012 will be made prior to any donation of the cash settlement proceeds.

Policy, the Chicago Bar Foundation, and inMotion. The Institute for Law & Economic Policy is a public policy research and educational foundation established to preserve, study, and enhance access to the civil justice system for all consumers. The Chicago Bar Foundation organizes Chicago's legal community to use their skills and resources to provide low-income and disadvantaged citizens of Chicago with needed legal assistance. InMotion provides free legal services to low-income women in New York City, most of whom are survivors of domestic violence.

## VI.   CONCLUSION

For the reasons described above, Lead Plaintiffs' Motion for Approval of Distribution Plan should be granted, and the proposed Order Approving Distribution Plan should be entered.

Dated:  December 21, 2012                         Respectfully submitted,

**COHEN MILSTEIN SELLERS
 & TOLL PLLC**

By:  ___/s/ Carol V. Gilden_____
Carol V. Gilden
190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
Tel.: (312) 357-0370
Fax:  (312) 357-0369
cgilden@cohenmilstein.com
Attorney ID: 06185530

-and-

Steven J. Toll
Daniel S. Sommers
Joshua M. Kolsky
1100 New York Avenue N.W.
West Tower, Suite 500
Washington, DC 20005-3964
Tel.: (202) 408-4600

**LABATON SUCHAROW LLP**


By: _____/s/ Jonathan M. Plasse_____
Jonathan M. Plasse
Javier Bleichmar
Nicole Zeiss
140 Broadway
New York, NY 10005
Tel.:  (212) 907-0700
Fax:  (212) 818-0477

**BERNSTEIN LITOWITZ BERGER**
 **& GROSSMANN LLP**


By: _____/s/ Avi Josefson_____
Steven B. Singer
Jeroen van Kwawegen
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel.: (212) 554-1400
Fax: (212) 554-1444

-and-

Avi Josefson
2835 N. Sheffield Avenue, Suite 409
Chicago, Illinois 60657
Tel.: (773) 883-5382

*Co-Lead Counsel for the Court-appointed Lead
Plaintiffs and the Class*